[No. B185265. Second Dist., Div. Six. Mar. 10, 2006.]

In re JOEL ALCOX, on Habeas Corpus.
THE PEOPLE, Real Party in Interest and Appellant, v.
JOEL ALCOX, Petitioner and Respondent.

COUNSEL

Thomas W. Sneddon, Jr., District Attorney, and Gerald McC. Franklin, Deputy District Attorney, for Real Party in Interest and Appellant.

Juliana Drous, under appointment by the Court of Appeal, for Petitioner and Respondent.

OPINION

**YEGAN, J.**—This case serves as a textbook example of a court impermissibly "second-guessing" criminal defense counsel's tactical decisions in derogation of United States and California Supreme Court precedent. We reverse and conclude, on the merits, that Joel Alcox (defendant) received the effective assistance of counsel at his murder trial almost 20 years ago.

The People appeal from a habeas corpus order setting aside a 1987 felony murder conviction. (Pen. Code, § 1506.)[1] Defendant was sentenced to 26 years to life after a jury convicted him of first degree murder (§§ 187, 189), robbery (§ 211), and first degree burglary (§§ 459, 460) with a firearm enhancement (§ 12022, subd. (a)). The Santa Barbara County Superior Court granted habeas corpus relief based on "ineffectiveness of trial counsel in failing to advance plausible arguments for innocence, and failing to investigate evidence of alibi."

### The 1987 Conviction

On the evening of February 16, 1986, Thakorbhai Patel was shot and killed at the Lompoc Motel. Patel owned the motel and had living quarters adjacent to the motel office. The police found the lift-up portion of the office counter tilted up and the money drawer open. A $5 bill was on the floor three or four feet from a door leading to the motel office.

---

[1] All statutory references are to the Penal Code.

A motel guest found Patel and heard him say "Sanjo, Sanjo, Sanjo." Patel had a bullet lodged in his jaw and had lost a lot of blood from a gunshot wound to the chest. Paramedic Kathy Ginez heard Patel say "Sirgernol." Fireman Roy Belluz assisted the paramedic and heard Patel say "Haraj Mavar" before dying.

Two weeks later, defendant implicated himself in the crime by telling Robert Garcia that he and Richard Lothery were at the motel. Defendant said that his fingerprints had been found there, but that he would not be apprehended. Fifteen-year-old Caroline Gonzales overheard the conversation.

A confidential informant told the police that Richard Lothery and John Wilcox committed the robbery. Because defendant was Lothery's friend and his name sounded similar to "Wilcox," the police asked him to come to the police station for an interview.

Defendant waived his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]) and voluntarily gave a taped confession. Defendant said that he and Lothery were drinking and needed money to buy more liquor. Lothery pulled a revolver from his waistband and said, "Let's go get some money." Walking past the motel, they noticed that the office was vacant. Defendant muffled the door bell with his hand, entered, and opened the cash drawer. When Patel walked into the office, defendant bumped him, ran to the parking lot, and heard two shots. Defendant told the police, "I didn't want to rob nobody, I don't want to shoot nobody."

Defendant and Lothery were arrested and placed in different jail cells. On March 26, 1986, they spoke to one another through a vent. Carol Seilhamer, a police dispatcher, overheard the conversation, took notes, and taped part of the conversation. Lothery told defendant that his confession "really fucked [them] up." Defendant said that he would tell his lawyer "that I made a false statement" and said that his friends could provide an alibi defense. Lothery lamented, "We're looking at 25 years to life, and I don't think we're going to get out of this." Defendant said that he could get friends to falsely testify. Defendant told Lothery: "I got these mother fuckers who will swear I was w/them the whole w[ee]kend. I'll swear I made a false statement."

At trial, defendant claimed that a third person, Sanjay Patel, may have shot the victim.[2] Sanjay's father was the victim's friend and business partner. Junia Fritz testified that Sanjay came to her apartment the evening of the

---

[2] On April 11, 1987, a year after the robbery, the Lompoc Police received a 911 call from a caller who identified himself as Jay Patel. The man said, "I'm ready to go in for the murder. . . . I'm ready to confess to murder, Lompoc Motel." When the officer asked for clarification, the man said, "I'm ready to admit to the murder." The call was recorded and

murder and gave her a handgun wrapped in a cloth. He asked her to hold it for him and to clean off the fingerprints. Sanjay retrieved the handgun two days later. Fritz refused to talk to the police and told an investigator that Sanjay used to supply her drugs. Prabu Patel, Sanjay's father, testified that Sanjay was sometimes called "Jay" but was never called "Sanjo."

Rico Tomaz, an inmate at the Santa Barbara County Jail, testified that Lothery told him it "started out as a burglary, turned into a robbery, [and] ended up a murder." A second inmate, Sean Hollich, heard Lothery say "he pointed a gun at this guy and shot him." Lothery bragged that he was "an 18-year-old murderer." On another occasion, Hollich heard Lothery say that "he shot this guy in the process of robbing this place when he was splitting."

Defendant's theory of defense was that while he was present at the motel, he did not participate in the robbery or the murder. He was convicted as an aider and abettor and sentenced to 26 years to life. We affirmed the conviction on October 6, 1988, in an unpublished opinion (B027929) indicating, inter alia, that the taped confession was voluntary, reliable, and impliedly credited by the jury.[3] The California Supreme Court denied review. Defendant's trial attorney, Kenneth Biely, died in 1993.

### The Petition for Writ of Habeas Corpus

On October 9, 2003, defendant filed a habeas corpus petition alleging that he was factually innocent and was denied effective assistance of trial counsel. The petition stated that trial counsel "failed to attack the reliability" of defendant's confession, impeach prosecution witness Caroline Gonzales, or investigate and present exculpatory testimony.

The Santa Barbara County Superior Court issued an order to show cause and conducted an evidentiary hearing. On the first day of the hearing, defendant's attorney stated that "we're not litigating . . . *Miranda* and whether the confession should have been suppressed . . . . [¶] That issue as litigated, lost, lost on appeal. So we are not arguing that the confession should not have been admitted. The argument of reliability is not a legal issue. It's a factual issue. And so that's relevant to this proceeding. [¶] Of

---

traced to Sanjay's house. An officer went to the house and spoke to Sanjay who smelled of, and appeared to be under the influence of, alcohol.

[3] The 31-page exhaustive opinion was authored by then Presiding Justice Stone. We knew then and we know now that defense counsel made a tactical decision not to tender an alibi defense. Defendant knew then and knows now that he concurred in this trial tactic. (See *post,* p. 666.)

course, the reliability of the confession should have been an issue at Mr. Alcox's trial, but because of the way Mr. Biely presented the evidence, it wasn't. He conceded that the confession was reliable at trial, which is part of our ineffective assistance of counsel issue . . . ."

Defendant claimed that he was under the influence of LSD when he confessed and was drinking all night before the confession. Defendant said that Attorney Biely wanted him to testify that Lothery did the shooting. Defendant refused to do so. Biely sent defendant a letter confirming their conversation.[4]

Lompoc Police Sergeant Harry Heidt testified that defendant agreed to be interviewed at the police station. Defendant did not smell of alcohol or appear to be under the influence of drugs. Defendant said he had an alibi and was partying at a friend's house (Kelly Hughes) at Vandenburg Air Force Base. When Heidt told defendant the alibi was false, he admitted lying and confessed. Heidt's testimony was corroborated by Kenneth Ast, a district attorney investigator, who sat in on the interview. The superior court listened to the taped confession "multiple times" and reviewed a transcript of the confession.

Lothery was convicted of first degree murder, robbery, and burglary in a separate trial and is serving a life sentence. Lothery appeared at the evidentiary hearing and claimed that defendant was not at the motel. Lothery said that he and Sanjay went to the motel to sell a drill. Sanjay argued with the victim, drew a handgun, and shot the victim. Lothery knew the victim and never heard the victim or anyone else refer to Sanjay as "Sanjo."

### Superior Court Rulings

The superior court found: "The case against Mr. Alcox is reduced in essence to his confession, the testimony of Carolin[e] Gonzales who reported hearing a conversation two weeks after the murder in an alley between Robert Garcia and Joel Alcox, in which Alcox stated that he and Lothery were there, the police had their fingerprints, but would never catch them, and the jailhouse conversations of Joel Alcox and Richard Lothery."

The superior court found that defendant's confession was "freely and voluntarily given. It was not the product of coercion. . . . Despite Mr Alcox's

---

[4] The letter stated in pertinent part: "This is to confirm our previous discussion wherein I advised you that I felt that you would be ill-advised to take the stand and deny the truth of the statement that you gave the police. It is my feeling that the jury would believe the first statement without regard to what you said in Court. Since you do not want to take the stand and put the blame on Lothery, it is not my plan to call you to testify."

claim that he was suffering the effects of recent drug and alcohol consumption, none of these claims are evident in the interview."

The court also found that Lothery was not credible and had "given other versions" of what happened. Although Caroline Gonzales's trial testimony was contradicted by Robert Garcia, "Gonzales did not repudiate her prior testimony as claimed. She did appear concerned that she was young at the time of her testimony and had been using drugs. She also said that she would not intentionally lie."[5]

The superior court acknowledged that there was new evidence that the paramedic (Kathy Ginez) and the paramedic's daughter (Tracy Maniscalco) may have heard the victim say "Sanjay." The court, however, found that "Sanjay Patel is not a new player in this cast of characters. He was previously pointed to as having been involved in the shooting. The original trial had portions devoted to the question of whether Sanjo was a nickname for Sanjay."

On the issue of factual innocence, the superior court found: "The law requires that the prosecution's case be completely undermined by the new evidence. I find that it is not completely undermined; the conflicts in evidence that existed at the time of trial still remain. There is additional evidence which has been presented, some the court finds credible and some not credible. That is not enough to grant the [habeas corpus] request."

On the issue of ineffective assistance of counsel, the superior court found that Attorney Biely did not investigate or pursue an alibi defense, that a reasonable investigation would have revealed that Robert Garcia disputed Carolina Gonzales's account of defendant's conversation, and that discovery of Gonzales's drug use could have impeached her testimony. The court found that Biely "assumed" that defendant's "confession was in fact completely true" and that Biely failed to distinguish "between admissibility of the confession and truth of the facts contained in the confession. As such it constituted an actual withdrawal of the defense of innocence."

### Standard of Review

A claim of ineffective assistance of counsel presents a mixed question of fact and law, which is generally subject to de novo review, especially where

---

[5] Robert Garcia denied that defendant told him about the murder. Garcia was 14 or 15 years old at the time, drinking alcohol, and "doing" marijuana, LSD, speed, and "any narcotic I could get me hands on . . . ." Garcia said that defendant's lawyer never interviewed him but admitted that he was questioned by so many different investigators, "I can't remember who it was. [¶] . . . [¶] [I]t was 20 years ago. So I can't tell you who was a cop, who wasn't. All I know was, there was a series of people coming and questioning me."

constitutional rights are implicated. (*In re Resendiz* (2001) 25 Cal.4th 230, 248–249 [105 Cal.Rptr.2d 431, 19 P.3d 1171].) As a reviewing court, we accept the superior court's credibility determinations and independently determine "whether [defendant] has established by a preponderance of substantial, credible evidence [citation] that his counsel's performance was deficient and, if so, that [defendant] suffered prejudice." (*In re Alvernaz* (1992) 2 Cal.4th 924, 945 [8 Cal.Rptr.2d 713, 830 P.2d 747]; see, e.g., *In re Pratt* (1999) 69 Cal.App.4th 1294, 1314–1315 [82 Cal.Rptr.2d 260].) Prejudice is not presumed. Defendant must show that counsel's deficient performance " 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' [Citations.]" (*People v. Earp* (1999) 20 Cal.4th 826, 870 [85 Cal.Rptr.2d 857, 978 P.2d 15].)

 In reviewing an ineffective assistance of counsel claim, courts do not generally second-guess counsel's tactical decisions. (*People v. Hinton* (2006) 37 Cal.4th 839, 876 [38 Cal.Rptr.3d 149, 126 P.3d 981]; *People v. Weaver* (2001) 26 Cal.4th 876, 925–926 [111 Cal.Rptr.2d 2, 29 P.3d 103].) "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Citation.]" (*Strickland v. Washington* (1984) 466 U.S. 668, 689 [80 L.Ed.2d 674, 694–695, 104 S.Ct. 2052].)

The superior court order violates the above principles. It is the zenith of "second-guessing" defense counsel's tactical decision amounting to a 180 degree turn in trial tactics. As we explain, there was no duty to pursue an alibi given the facts and circumstances.

### The Phantom Alibi Defense

Although it is unrefuted that defendant told the police the alibi story was false, the superior court found that counsel was ineffective in not developing an alibi defense. As a matter of trial tactics, Biely decided not to pursue an alibi defense because he faced the risk of opening the door to further

incriminating evidence. While in jail, defendant was overheard saying that he would concoct a false alibi defense. To say that this piece of evidence "boxed counsel in" would be an understatement.

■ " '[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.' " (*In re Lucas* (2004) 33 Cal.4th 682, 722 [16 Cal.Rptr.3d 331, 94 P.3d 477]; *In re Thomas* (2006) 37 Cal.4th 1256 [39 Cal.Rptr.3d 845, 129 P.3d 49].) Citing the American Bar Association Standards for Criminal Justice our Supreme Court has recently indicated that the " 'duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty.' " (*In re Thomas, supra,* 37 Cal.4th at p. 1262.) Here, we do not know what defendant told Biely but we do know what he told others on numerous and independent occasions. Biely was aware of these damning statements and made a reasonable decision not to investigate alibi. The reason is obvious: according to defendant, "I got these mother fuckers who will [falsely] swear I was w/them the whole w[ee]kend." (P. 661, *ante.*)

The record shows that defendant was advised of Biely's decision not to advance an alibi defense. At the conclusion of the trial, the trial court noted that there was no alibi evidence and asked, "Was that done as a trial tactic?" Biely stated that defendant told him "he had some alibi witnesses who would place him somewhere other than at the scene of the homicide, and I was also made aware that the District Attorney's office had witnesses who were at the same party who would testify that Alcox was not in fact present at that party. [¶] I was aware that he had made a statement to the police. I was also aware that his then attorney had attempted on various occasions to convince the court not to allow that statement to be admitted. I was confident that the statement would be admissible; that the jury would be much more likely to believe that statement than statement from his witnesses or him . . . that he wasn't there . . . ."

Defendant agreed that was the defense strategy. Biely stated: "Mr. Alcox and I made a tactical decision to approach this case rather than from a standpoint of alibi[,] that we would simply rely upon the statement [to the police] and attempt to convince the jury that he had disassociated himself from the offense of homicide prior to its occurrence. [¶] The Court: All right. Mr. Alcox, you understand what your attorney has said? [¶] The Defendant: Yes. [¶] The Court: You join? That was your decision along with his? [¶] The Defendant: Yes."

The prosecutor construed the jailhouse statement as evidence of defendant's promise to Lothery to falsely retract a true confession. The superior court found: "Strangely, Mr. Alcox's defense counsel took the same view, constituting a withdrawal of the defense of innocence." In our opinion, to reach that conclusion, one has to " 'fling a plank of hypothesis over an abyss of uncertainty.' " (*Gradus v. Hanson Aviation, Inc.* (1984) 158 Cal.App.3d 1038, 1056 [205 Cal.Rptr. 211].)

Biely reasonably believed that the jury would view the jailhouse statement as an apology and a promise by defendant to have friends falsely testify. Defendant told the police the alibi story was a lie. Biely also knew that the police and prosecution had interviewed possible alibi witnesses. The prosecutor warned him that the witnesses could be easily impeached. As an attorney, Biely had an ethical obligation not to present perjured testimony or call a witness who would testify untruthfully. (*In re Branch* (1969) 70 Cal.2d 200, 210 [74 Cal.Rptr. 238, 449 P.2d 174]; *People v. Spirlin* (2000) 81 Cal.App.4th 119, 126–127 [97 Cal.Rptr.2d 1].) Nor did defendant have a constitutional right to commit perjury. (*Nix v. Whiteside* (1986) 475 U.S. 157, 173 [89 L.Ed.2d 123, 138, 106 S.Ct. 988] [defendant's constitutional right to testify does not include the right to commit perjury].)

After the conviction, defendant had 18 years to obtain Lothery's exonerating statement and to locate alibi witnesses. Little changed. At the hearing on the habeas corpus petition, defendant was asked if he was at Kelly Hughes's house on February 16, 1986, when the shooting occurred. Defendant answered, "I'm not sure. I don't know." He stated: "Every day I was partying. I was drinking, I was doing drugs. One day really blurred into the next, and so I couldn't really say where I was . . . ." None of defendant's friends appeared at the evidentiary hearing to say that he was at the Hughes party. The superior court considered this to be a plus for defendant because "nobody is reported as authoritatively saying Joel Defendant was not there." The logic of this reasoning escapes us. Defendant made no affirmative showing that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense. (*People v. Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859].)

### Withdrawal from Conspiracy

Defendant claims that he was denied effective assistance of counsel because Biely defended on the theory that defendant did not aid and abet the robbery. Biely argued that defendant ran from the motel before the victim was shot. He told the jury: "If you have withdrawn and if you have communicated that withdrawal, you are only responsible for those acts of your co-conspirators that occurred prior to your withdrawal. But no acts after. And clearly whoever killed Mr. Patel killed him after . . . Alcox had run."

The jury was instructed that abandonment is not a defense to an attempt to commit a crime. (CALJIC 6.01.) It was also instructed that a coconspirator could effectively withdraw from a conspiracy by communicating to his coconspirators such withdrawal. This withdrawal would shield the person from liability for future crimes committed by the coconspirators. (CALJIC 6.20; see *People v. Belmontes* (1988) 45 Cal.3d 744, 793 [248 Cal.Rptr. 126, 755 P.2d 310] ["to withdraw from a conspiracy, one need only make an affirmative repudiation communicated to his coconspirators"].)

Biely's argument was based on the theory that defendant entered the motel to do a "till tap." Biely argued that defendant "was guilty of at least an attempted burglary. But that's not the same thing as the felony murder . . . ." "[U]nder no theory is he a murderer. He didn't commit a robbery." Biely urged the jury to use its common sense and find that a petty theft or attempted burglary is not the same as first degree murder. He expressly argued that "actions speak louder than words" and that by running out of the motel, defendant communicated his withdrawal from the conspiracy.

The argument was consistent with the defense strategy that defendant had been honest with the police. Although defendant told Lothery that he would present a phony alibi defense, Biely argued that defendant did not recant his confession or "bring in any false witnesses." Biely argued that the jury should believe defendant and acquit on the murder charge.[6]

It is not ineffective assistance of counsel for counsel to admit obvious weaknesses in the defense case. (*People v. Mayfield* (1993) 5 Cal.4th 142, 177 [19 Cal.Rptr.2d 836, 852 P.2d 331].) "[W]here the evidence of guilt is quite strong, 'it is entirely understandable that trial counsel, given the weight of incriminating evidence, made no sweeping declarations of his client's innocence but instead adopted a more realistic approach, namely, that . . . defendant . . . may have committed [some of the charged crimes] . . . .' " (*People v. Gurule* (2002) 28 Cal.4th 557, 612 [123 Cal.Rptr.2d 345, 51 P.3d 224].) " ' "[G]ood trial tactics [may] demand[] complete candor" with the jury. [Citation.]' " (*Ibid.*)

---

[6] With respect to the jailhouse conversation, Biely stated: "I admit it sounds bad. . . . But when you have a defendant on trial who is telling someone else, a co-defendant, 'Well, I'm going to phony up my story and I'm going to tell them I wasn't there. Don't worry about it. I'll get some alibi witnesses.' And I know that sounds bad, and I'm the first to admit that. But I point out to you he didn't do that. He said he was going to. . . . Maybe he was afraid of Lothery. I'm not sure what his motives were, but in any case he didn't bring in any false witnesses. He didn't recant his statement. He didn't do anything other than simply assert that the original story that he gave was what happened and that he is not a murderer."

Defendant's confession, jailhouse statements, and admission in the presence of Caroline Gonzales was strong evidence of guilt. Biely attempted to make the best of a bad situation, given his very limited options. (*People v. Mayfield, supra,* 5 Cal.4th at p. 177.) It was not ineffective assistance of counsel to concede some measure of culpability and offer the jury some other choice in defendant's favor. (*People v. Bolin* (1998) 18 Cal.4th 297, 334–335 [75 Cal.Rptr.2d 412, 956 P.2d 374]; see *Anderson v. Calderon* (9th Cir. 2000) 232 F.3d 1053, 1089 [no prejudice even though counsel made "risky" but reasonable argument for jury nullification].)

## Lord v. Wood

The superior court granted habeas corpus relief based on the theory that "Biely regarded it as established that his client was at the scene and that it would be both useless and unethical to attempt to prove otherwise." Citing *Lord v. Wood* (1999) 184 F.3d 1083, 1095, footnote 9, it ruled that Biely's belief in defendant's guilt did not create an ethical bar against the introduction of exculpatory evidence.

*Lord v. Wood* is not here controlling. There, the defendant was tried and convicted for murder. Defense counsel failed to interview or call three witnesses who saw the victim alive after the defendant allegedly killed the victim. (*Lord v. Wood, supra,* 184 F.3d at p. 1092.) The federal court found that the defendant was denied effective assistance of counsel because "[p]resenting the testimony of the boys would not have entailed significant costs in terms of the defense strategy. . . . [T]he boys' statements dovetailed with the[] defense and would not have opened the door to any damaging evidence. Nor would the proffer of three witnesses, who were unrelated in any fashion to the defendant or the victim, have tainted Lord's attorneys. The jury might have believed the boys were mistaken, but certainly would not have thought that counsel was presenting manufactured testimony." (*Id.,* at p. 1095.)

Unlike *Lord v. Wood,* defendant was heard to say that the alibi was false and that he would get friends to falsely testify. Defendant's confession was corroborated by Gonzales who heard defendant say that he was at the motel. The taped confession, which identified Lothery as the shooter, was corroborated by Lothery's cellmates who heard Lothery brag about the murder. Lothery told them "it started out as a burglary, turned into a robbery, [and] ended up a murder." *Lord v. Wood* did not involve a taped police confession, jailhouse statements, jailhouse admissions by a coconspirator, or the defendant's statement that he would get friends to falsely testify.

The superior court reviewed the taped confession and the jailhouse statements, and considered Lothery's testimony. It was unconvinced that defendant was factually innocent but concluded that counsel's failure to investigate or assert an alibi defense "deprive[d] Mr. Alcox of facts that strongly raise issues of reasonable doubt."

■ "Depriving" an accused of facts that "strongly" raise issues of reasonable doubt is not the standard. Where newly discovered evidence is the basis for a habeas corpus petition, as alleged by defendant, the newly discovered evidence must "undermine[] the prosecution's entire case. It is not sufficient that the evidence might have weakened the prosecution case or presented a more difficult question for the judge or jury. [Citations.]" (*In re Clark* (1993) 5 Cal.4th 750, 766 [21 Cal.Rptr.2d 509, 855 P.2d 729].) Where the habeas corpus petition "attributes the failure to discover and present the evidence at trial to trial counsel's alleged incompetence[,] . . . the petitioner must establish 'prejudice as a "demonstrable reality," not simply speculation as to the effect of the errors or omissions of counsel. [Citation.]' " (*Ibid.*)

Defense counsel was not required to conduct a limitless investigation to be adjudged to have performed effectively. (*Lord v. Wood, supra,* 184 F.3d at p. 1095, fn 9.) Our courts "have never required counsel to investigate all prospective witnesses [citations] and we cannot presume prejudice from the mere fact of counsel's alleged inaction." (*People v. Jackson* (1980) 28 Cal.3d 264, 289 [168 Cal.Rptr. 603, 618 P.2d 149].) Defendant received effective assistance of counsel. He makes no showing "that the omissions of defense ounsel involved a critical issue, and that the omissions cannot be explained on the basis of any knowledgeable choice of tactics." (*People v. Floyd* (1970) 1 Cal.3d 694, 709 [83 Cal.Rptr. 608, 464 P.2d 64].)

*Conclusion*

■ Defendant confessed to a police sergeant and a district attorney's investigator. On another occasion, he bragged to an acquaintance that he was at the site of the homicide, that his fingerprints were there, but that he would avoid apprehension.[7] On another occasion, he made other incriminating statements to his codefendant, which were overheard by a police dispatcher. At that time, defendant said he would basically manufacture

---

[7] In his petition for rehearing, defendant argues that Robert Garcia refuted Carolyn Gonzales' testimony that she overheard defendant admit involvement in the shooting. The superior court found that Gonzales was a credible witness. The record further indicates that Garcia talked to other people about the shooting, refuting defendant's claim that he had an alibi. In an April 11, 1986 police report, district attorney investigator Kenneth Ast provided the following summary of a taped interview with Leslie Gibeau: "GARCIA told her (unknown time) that he (GARCIA) had spoke with Joel ALCOX and Ricky LOTHER. GARCIA said that ALCOX and LOTHERY told him that they were walking through the Motel when they heard a shot."

a false alibi. These separate incriminatory statements afford a reasonable basis to forgo foraging in the countryside for alibi witnesses. The trial court's ruling to the contrary cannot be sustained.

The judgment of the superior court granting the petition for writ of habeas corpus and vacating the judgment is reversed.

Gilbert, P. J., and Perren, J., concurred.

A petition for a rehearing was denied March 28, 2006, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied June 28, 2006, S142717.