(173 P.3d 1167)
No. 96,869

DAVID J. SILVERS, *Appellant,* v. STATE OF KANSAS, *Appellee.*

Opinion filed January 11, 2008.

*Michael S. Holland II,* of Law Offices of Michael S. Holland, of Russell, for appellant.

*Kristi L. Barton,* assistant district attorney, *Nola Tedesco Foulston,* district attorney, and *Paul J. Morrison,* attorney general, for appellee.

Before RULON, C.J., GREENE, J., and BRAZIL, S.J.

RULON, C.J.: Movant David J. Silvers appeals the denial of his K.S.A. 60-1507 motion, following an evidentiary hearing in the district court. We affirm.

The issue on appeal is whether there was substantial competent evidence that movant's trial counsel was competent.

## Underlying Facts

On April 27, 2003, S.M., the 13-year-old female victim, was spending the night with her friend Amber at Amber's aunt's apartment. Shortly after the victim and Amber arrived at the apartment, James Taylor arrived with his friend, movant. Eventually, the victim was left alone with the two men.

The victim testified she was given alcohol, marijuana, and an unidentifiable pill. The victim fell asleep and was on the floor naked when she awoke. One of the men was penetrating the victim vaginally, and the other was about to place his penis in the victim's mouth. The victim could not tell which man was on top of her, but she immediately told the man on top of her to get off and found her clothes.

After getting dressed, the victim called her sister to pick her up. The victim was taken to the hospital where a sexual assault examination was performed. The examination revealed (1) tearing and redness in the victim's vagina consistent with injury due to the force of insertion; (2) tearing and redness around the victim's rectum; and (3) a plastic dome-shaped object inside the victim's vagina which one of the State's DNA analysts later testified had possibly been attached to the tip of a condom. Semen attributable to movant was found on a rectal swab and in the middle and rear sections of the victim's underwear. No semen was detected on a vaginal swab. One sperm cell was found on the dome-shaped object, but testing was unable to link the sample to either movant or Taylor.

Movant was charged with rape of a child under 14 years of age and aggravated criminal sodomy of a child under 14 years of age.

Prior to trial, movant's defense attorney, Pamela McLemore, moved to admit evidence of the victim's prior sexual relationships, contending such evidence was relevant because movant would be pursuing a misrepresentation of age/consent defense based on the victim's statement she was "old enough." The district court denied the motion, finding movant was free to present evidence of the victim's alleged misrepresentation of her age on the night at issue, but the court would not allow argument that consent or misrepresentation was a defense to the charges.

During opening statements defense counsel refuted the rape evidence, but admitted movant had some sort of consensual sexual activity with the victim. Defense counsel stated the victim said she was "old enough," "looked old," and "indicated [the victim] wanted to mess around with these guys, so they did."

At trial the State called movant's friend, Jeremy Twist, who testified he overheard movant admit to having sexual contact with the victim. Equally important, movant admitted during direct examination he had anal sex with the victim, but claimed such conduct was consensual. Additionally, movant testified he believed the victim was older because of her appearance and because when he asked the victim how old she was, the victim said, "Old enough."

During closing argument, defense counsel stressed inconsistencies and insufficiencies in the evidence supporting the rape charge and further argued movant had been honest about his sexual encounter with the victim.

Ultimately, movant was found guilty of aggravated criminal sodomy, but acquitted of rape. On direct appeal, movant argued insufficiency of the evidence, but his conviction was affirmed.

Movant then filed the instant 60-1507 motion, contending trial counsel's jury nullification strategy essentially resulted in counsel entering a guilty plea without movant's consent. Jury nullification is defined as:

"A jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness." Black's Law Dictionary 875 (8th ed. 2004).

An evidentiary hearing was held with movant present, but movant did not present evidence, instead relying on his motion and the record. The State called movant's trial counsel to testify. Counsel testified she did not remember conversations she had with movant prior to trial, but said, "Well, the problem with the case is that we didn't have a legal defense. I was—honestly, I was trying to go for jury nullification, 'cause it just seemed so injust [*sic*] at the way the law's written." Counsel testified she did not remember if she had discussed her strategy and the consequences with movant; however, counsel testified her usual practice was to "tell . . . my client everything about the case, and we go over the facts and talk about the pros and cons of different strategies." Counsel further testified she "probably did" go over her strategy with movant and she could not remember ever presenting a defense without clearing the defense strategy with a defendant.

The district court ultimately found movant's trial counsel "did everything she could, short of violating her ethical oath to testify truthfully, to provide assistance to her former client."

## Trial Counsel's Representation

Where there has been a full evidentiary hearing before the district court, as here,

"the appropriate standard of review is findings of fact and conclusions of law. Under this standard, an appellate court must determine whether the district court's factual findings are supported by substantial competent evidence and whether those findings are sufficient to support the district court's conclusions of law. [Citation omitted.] Ultimately, the district court's conclusions of law and its decision to grant or deny the 60-1507 motion are reviewed using a de novo standard. [Citation omitted.]" *Bellamy v. State*, 285 Kan. 346, 355, 172 P.3d 10 (2007).

Before defense counsel's assistance is determined to be so defective as to require reversal of a conviction, a 60-1507 movant must establish first that trial counsel's performance was deficient. In other words, trial counsel made errors so serious that his or her performance was less than guaranteed by the Sixth Amendment to the United States Constitution. Second, movant must establish trial counsel's deficient performance prejudiced the defense. This requires a showing trial counsel's errors were so serious as to deprive

movant of a fair trial. *State v. Mathis*, 281 Kan. 99, 109-10, 130 P.3d 14 (2006).

"Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. [Citation omitted.] To show prejudice, the defendant must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Betts*, 272 Kan. 369, 387-88, 33 P.3d 575 (2001).

Although movant now argues several instances of trial counsel's perceived ineffectiveness, his primary claim is jury nullification is not a valid defense strategy and trial counsel should have instead required the State to establish movant's guilt beyond a reasonable doubt.

Clearly, criminal defendants are not entitled to have the jury instructed on jury nullification, but the jurors in a criminal case have the clear ability to disregard both the rules of law and the evidence in order to acquit a defendant. *State v. McClanahan*, 212 Kan. 208, 215-17, 510 P.2d 153 (1973).

Our review of cases from other jurisdictions indicate jury nullification is an acceptable defense strategy, but only when there is strong evidence of guilt and other options are highly unlikely to succeed.

For example, in *People v. Ganus*, 148 Ill. 2d 466, 594 N.E.2d 211 (1992), the defendant confessed in detail to a prison murder. Despite the fact compulsion is not a defense to first-degree murder, the defendant's attorney introduced evidence the defendant was in a gang and the murder had been committed under gang orders. 148 Ill. 2d at 471-72. The *Ganus* court held:

"What the instant case presents is a situation where the defendant literally had no defense. Evidence of his guilt was overwhelming. His counsel conceived a compulsion defense which, though not a legal defense, could or might have persuaded a jury not to convict. Jury nullification is always a possibility. It is not inconceivable that a compulsion defense might have evoked empathy, compassion or understanding and sympathy in the minds of the jurors. . . . A weak or insufficient defense does not indicate ineffectiveness of counsel in a case where a defendant has no defense. In this case it would appear that defense counsel used

his imagination and resourcefulness to come up with something where he had nothing to go on." 148 Ill. 2d at 473-74.

In *In re Alcox*, 137 Cal. App. 4th 657, 40 Cal. Rptr. 3d 491 (2006), the defendant was charged with felony murder despite the fact he ran away from the hotel defendant and his co-conspirators were attempting to burglarize before the murder took place. The defendant had confessed to the crime—both to police and in front of a third party—and had made incriminating jailhouse statements. 137 Cal. App. 4th at 661. Defendant's attorney essentially admitted the defendant was present and involved in the crime, but unsuccessfully urged the jury to convict the defendant of attempted burglary rather than murder based on the defendant's disengagement before the hotel clerk was shot, and his honesty and cooperation with police. 137 Cal. App. 4th at 667-68. The *Alcox* court held:

"It is not ineffective assistance of counsel for counsel to admit obvious weaknesses in the defense case. [Citation omitted.] '[W]here the evidence of guilt is quite strong, "it is entirely understandable that trial counsel, given the weight of incriminating evidence, made no sweeping declarations of his client's innocence but instead adopted a more realistic approach, namely, that . . . defendant . . . may have committed [some of the charged crimes]. . . .' " [Citation omitted.] "[G]ood trial tactics [may] demand complete candor" with the jury. [Citation omitted.]'

"[There] was strong evidence of guilt. [The defense attorney] attempted to make the best of a bad situation, given his very limited options. [Citation omitted.] It was not ineffective assistance of counsel to concede some measure of culpability and offer the jury some other choice in defendant's favor. [Citations omitted.]" 137 Cal. App. 4th at 668-69.

When defense attorneys have made an educated, well-considered decision to rely on a jury nullification strategy, appellate courts have generally concluded such attorneys afforded effective assistance of counsel. But, when jury nullification strategy is presented haphazardly or in preference for other defenses with a likelihood of success, appellate courts have concluded such attorneys were ineffective.

Here, movant arguably could have been acquitted of rape without admitting guilt to aggravated criminal sodomy, but an acquittal was not a certainty. Although movant now argues trial counsel should have exploited the fact the victim did not know who was on

top of her, the fact remains the victim testified "someone" was on top of her. The object found in the victim's vagina and her vaginal injuries corroborated the victim's testimony, so the only real question was whether the "someone" was movant or Taylor.

The evidence supporting movant's conviction for aggravated criminal sodomy was overwhelming. Independent of trial counsel's opening and closing statements and movant's testimony, the evidence established: (1) the victim's rectal injuries, (2) movant's semen in the victim's underwear, and (3) movant's semen inside the victim's rectum. We are convinced the jury could not possibly have acquitted movant of this charge.

Essentially, trial counsel conceded movant's guilt on the aggravated criminal sodomy charge in order to preserve movant's honesty so the jury might believe movant's version of the facts on the rape charge, or maybe even feel sympathy for movant and ignore the district court's instructions and acquit on the aggravated criminal sodomy charge as well. To a certain extent trial counsel's strategy was successful. Far from showing incompetency, trial counsel's representation was that of an effective attorney.

Importantly, movant has not established he did not consent to trial counsel's strategy. At the evidentiary hearing, movant chose to rest on the record and his motion, neither of which state movant did not understand or agree with trial counsel's strategy. Trial counsel testified her usual practice was to discuss defense strategy with her clients, and indeed counsel could not remember an instance where she had not done so.

We firmly conclude the district court had substantial competent evidence to find movant's trial counsel was effective.

Affirmed.