Filed 5/13/14  P. v. Bingham CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION 4

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>FRANKLIN BINGHAM,<br><br>        Defendant and Appellant. | A138766<br><br>(Alameda County<br>Super. Ct. No. H51168) |

While on trial for unlawfully taking a vehicle, defendant Franklin Bingham sought to replace his appointed attorney because the attorney did not plan to call any witnesses who Bingham claimed would provide an alibi.  The trial court denied Bingham's request, and Bingham was convicted.  Bingham sought to replace his attorney again before sentencing, and the trial court again denied his request.  Bingham argues on appeal that the trial court abused its discretion in denying both motions.  We disagree and affirm his conviction.  But we agree with Bingham and respondent that the trial court incorrectly calculated Bingham's presentence custody credits, and we therefore remand to the trial court to recalculate them.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

On the morning of June 13, 2011, a Union City resident (the victim) woke up to find his car missing, and he reported it to the police.  The following evening, around 6:30 p.m., a motorist driving a different car was hit from behind by a person driving the

1

victim's stolen car. The driver of the stolen car drove off, and the motorist who had been hit followed the stolen car and called 911. While on the phone with 911, the motorist saw a man (who the motorist identified as Bingham both before and at trial) get out of the car, retrieve a backpack from the trunk, and walk away, abandoning the vehicle in the middle of the road. The man then dropped the backpack in a bush and fled the area on foot.

Police responded and discovered that the abandoned car had been reported stolen by the victim the day before. Officers searched the car and found a receipt from a purchase made at a Fremont convenience store earlier on the day of the accident. The receipt revealed the last four digits of the card number used for the purchase. Officers went to the convenience store and viewed surveillance footage that corresponded to the time on the receipt. Using a cell phone, an officer took a photo of a person who appeared on the videotape at the time matched to that on the receipt, and this person was later identified as Bingham. Officers also recovered latent fingerprints from the rear-view mirror of the stolen car, and two of the prints were matched to Bingham.

Around 9:00 on the same evening of the accident, police were called to a residence because a fight had broken out between Bingham and a man named Brian Winton. Bingham had left the residence by the time the police arrived. But around 9:30, an officer saw Bingham in the convenience store listed on the receipt recovered from the abandoned car, which was near the residence, and arrested him. Police found a card in Bingham's pocket that had the same last four digits as those found on the convenience-store receipt.

Bingham was ultimately charged with unlawfully taking a vehicle in connection with the stolen car and attempted murder in connection with the fight with Winton. The two counts were charged in separate cases, and the attempted-murder case is not the subject of this appeal.

After the prosecution presented its case but right before it rested, Bingham requested a hearing under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*), seeking to discharge his appointed counsel and substitute another attorney. Bingham's complaint

was that his counsel did not plan to call any witnesses, even though there were "three to four people who are saying that I was somewhere else at the time of the accident," a reference to the hit-and-run incident where police discovered the stolen car.

Bingham's counsel explained to the trial court his reasons for not wanting to call these witnesses. To begin with, he believed it was unrealistic to present a defense that Bingham was not at the scene of the accident because of the overwhelming evidence connecting Bingham to the stolen car. Counsel explained that he instead planned to present a defense that the prosecution failed to prove that Bingham had the requisite intent. Bingham nonetheless insisted he wanted to call Mr. Winton, the complaining witness in the attempted-murder case, as an "alibi" witness. Bingham's counsel stated that he believed such a move would be "a bombshell to the proceedings in that [Winton] is a very volatile individual," and calling him would not help Bingham. He explained that Mr. Winton reportedly was "severely traumatically injured and was extremely high on meth at the time of the incident that [Bingham]'s purporting to use him as an alibi witness for timing." He also told the trial court he had talked with Bingham's other potential alibi witnesses, and they had been uncertain about the timing of key events. Finally, counsel explained that he believed calling these witnesses to testify would be "a major liability more than a favorable alibi at this juncture," because their testimony might reveal prejudicial information about the events leading to Bingham's attempted-murder charge. Counsel stated that he had a good relationship with Bingham and that Bingham had not "indicated anything personal against me," but they were having "a cerebral intellectual disagreement" about how to proceed.

Bingham did not contradict his counsel's statement that they had a good relationship, but he told the trial court that he believed it made sense to call the witnesses in the attempted-murder case to testify in the stolen-car case. The trial court explained to Bingham that the witnesses would be subject to cross-examination, and his attorney was "actually doing a very good job for you in terms of really trying to think through all the ramifications, considering that you have two separate cases, and trying to figure out how to sort out what he should present for you in one or both to present the best defense."

3

The court denied the *Marsden* motion, finding there was not a breakdown in the attorney-client relationship and that Bingham's attorney was "doing his job and then some, it looks like."

Following the denial of the *Marsden* motion, both sides rested and, later that day, the jury found Bingham guilty of unlawful taking of a vehicle. (Veh. Code, § 10851, subd. (a).) Following a subsequent court trial, the court found true numerous prior conviction allegations (§ 667.5, subd. (b)) and a prior strike (§ 1170.12).

About four months later and before Bingham was sentenced, Bingham again requested a new attorney, and the trial court held another *Marsden* hearing. Bingham again complained that his attorney had not called the witnesses from his separate attempted-murder case, and counsel again explained that "just because [Bingham] calls them alibi witnesses does not make them alibi witnesses." Bingham also was bothered that his attorney was no longer assigned to work on his attempted-murder case, meaning a different attorney would be handling that case. His counsel apologized to Bingham for not being able to handle his attempted-murder case but explained that "[t]hat's just the nature of the public defender's office" and observed that Bingham had been assigned "an excellent attorney" in that case.

During a lengthy discussion about counsel's trial tactics and qualifications, the trial court mentioned that a new attorney at this stage of the proceedings would not likely be to Bingham's advantage because a new lawyer would have "no familiarity" with the case. The court commented that "the person who is most familiar with the case is in the best position to complete the case," and it stated that it would grant a motion for a substitution of counsel only if "there were some substantial reasons" supporting it, which the court did not find. After further discussing the issues with Bingham and his counsel, the court denied Bingham's motion, concluding there was not an irreconcilable conflict and that the attorney had effectively represented Bingham. The court told Bingham that his counsel "really did an excellent job of representing you. He seemed extremely prepared. He seemed thoughtful about what he was doing. I think he tried, probably for reasons he seems to have explained in this case, had restrained himself a little bit because

4

there seemed to be a lot of things going on, most notably your second case.  To sort of prevent tainting the jury from a lot of extraneous facts in case number one from case number two that could have been tangentially relevant.  But I think he [counsel] probably went quite a ways to make sure that one case really didn't taint the other."

The court sentenced Bingham to 11 years in prison.  Bingham was awarded 784 days of presentence credit, composed of 654 days actually served and 130 days of conduct credit.  Bingham timely appealed.

## II.
### DISCUSSION

A. *The Trial Court Did Not Abuse Its Discretion in Denying Bingham's* Marsden *Motions.*

Bingham argues that the trial court committed reversible error when it denied his two *Marsden* motions.  We disagree.

When a defendant makes a *Marsden* motion, the trial court "must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance." (*People v. Smith* (2003) 30 Cal.4th 581, 604.)  "A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." (*Ibid.*)  On appeal following the denial of a *Marsden* motion, we review the trial court's decisions for abuse of discretion. (*Smith,* at p. 604.)  "Denial of the motion is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would 'substantially impair' the defendant's right to assistance of counsel." (*People v. Webster* (1991) 54 Cal.3d 411, 435.)

Bingham argues that the trial court abused its discretion in denying his *Marsden* motions because his attorney failed to present an affirmative defense on his behalf, thus demonstrating deficient performance.  He faults his trial attorney for calling "<u>no</u> witnesses" and presenting "little in the way of a defense." (Original underscore.)  But he provides no context for this argument, and he omits his counsel's detailed explanations

5

about why he believed that calling witnesses from Bingham's attempted-murder case would have hurt rather than helped the defense. Counsel acts competently in not calling witnesses where the attorney reasonably fears opening the door to further incriminating evidence and makes a tactical decision not to present an alibi defense. (*In re Alcox* (2006) 137 Cal.App.4th 657, 665.) " 'To sustain a claim of inadequate representation by reason of failure to call a witness, there must be a showing from which it can be determined whether the alleged additional defense witness was material, necessary or admissible, or that defense counsel did not exercise proper judgment in failing to call [the witness].' " (*In re Noday* (1981) 125 Cal.App.3d 507, 522.) A review of the transcripts of the *Marsden* hearings reveals sound reasons not to call witnesses who would have likely failed to prove that Bingham was absent at the scene of the accident and who would have opened the door to inflammatory information about Bingham's role in an attempted-murder case. Although Bingham may have felt strongly about presenting these witnesses, as he claims on appeal, it simply does not follow that his attorney acted incompetently in declining to call them.

On appeal, Bingham also claims, incorrectly, that his trial counsel failed to present a "lack of intent" defense as he had indicated he would during the first *Marsden* hearing. In fact, during his closing argument, Bingham's counsel pointed out the weaknesses in each piece of evidence presented by the prosecutor and repeatedly advised that the prosecution failed to show that Bingham knew the car was stolen or intended to deprive the owner of it. Given the substantial evidence connecting Bingham to the stolen car, this was a reasonable and competent argument to present.

We reject Bingham's assertion that the disagreement between him and his counsel demonstrated "a total breakdown of the attorney-client relationship." It is clear from the two *Marsden* hearings that, although they disagreed about trial strategy, Bingham and his attorney were communicating and had no personal conflict. " ' "[T]actical disagreements between the defendant and his attorney do not by themselves constitute an 'irreconcilable conflict.' " ' " (*People v. Myles* (2012) 53 Cal.4th 1181, 1207.) "Indeed, a 'defendant does not have the right to present a defense of his own choosing, but merely the right to

6

an adequate and competent defense.' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1192.) We conclude that Bingham received such a defense, and we reject his claim to the contrary.

### B. Bingham May Be Entitled to Additional Presentence Custody Credits.

The probation department prepared a report recommending that Bingham be sentenced to 11 years in prison. The report did not, however, calculate presentence custody credits. After the trial court sentenced Bingham, it asked, "He's going to receive how many days credit for time served?" The prosecutor responded that "I believe because it was a strike prior it would be served at 80 percent." It is true that because Bingham was sentenced under the three strikes law, any conduct credit he earns *once in prison* will accrue at a rate of no more than 20 percent of actual time served. (§§ 667, subd. (c)(5), 1170.12, subd. (a)(5); *People v. Thomas* (1999) 21 Cal.4th 1122, 1125.) But this does not address the amount of credit to which Bingham was entitled for time served *before* being sentenced to prison.

The clerk informed the court that Bingham had served 654 actual days in custody, and that figure appears on Bingham's abstract of judgment. Although the trial court never specified how many days Bingham was to receive for conduct credit, the abstract of judgment reflects that Bingham was awarded 130 days in conduct credit (just under 20 percent of 654 actual days). The abstract purports to award those credits under section 2933.1, which limits presentence conduct credit for people convicted of violent felonies to 15 percent of the actual time of confinement. That statute is inapplicable here, however, because Bingham was not convicted of one of the applicable violent felonies (§§ 2933.1, subd. (a), 667.5, subd. (c); *People v. Garcia* (2012) 209 Cal.App.4th 530, 533), and the court limited his credit to 20 percent, not 15 percent as specified in the statute.

We agree with Bingham and respondent that Bingham's presentence conduct credits should have been calculated under section 4019, the general statute governing credit for presentence custody. (*People v. Thomas*, *supra*, 21 Cal.4th at p. 1130; *People v. Philpot* (2004) 122 Cal.App.4th 893, 907.) The statute has been amended

several times over the last few years.  Bingham does not challenge respondent's argument that Bingham should be awarded credits under the version of the statute applicable to defendants, like Bingham, who committed crimes between September 28, 2010, and September 30, 2011.

Both parties ask this court to order that Bingham be awarded a total of 326 days of conduct credit under that version of the statute.  We decline to exercise our discretion to amend the number of presentence custody credits, however, because there is nothing in the record demonstrating that Bingham is entitled to credits under section 4019 by having satisfactorily complied with all relevant rules and regulations.  (E.g., § 1237.1 [no appeal shall be taken regarding error in calculation of presentence custody credits unless defendant first presents claim in trial court]; *People v. Mendez* (1999) 19 Cal.4th 1084, 1100-1101 [although court has discretion to consider credit issue when other issues are raised on appeal, it is not compelled to do so].)  Absent a record establishing Bingham's eligibility for these credits, we remand the matter to the trial court to award the credits if it can make the necessary factual findings to support them.

## III.
### DISPOSITION

The trial court is directed to make a determination of whether defendant is entitled to presentence conduct credits under section 4019 and, if so, to award them. If the trial court determines that Bingham is entitled to presentence conduct credits, the court shall prepare an amended abstract of judgment, and a certified copy of the modified abstract shall be forwarded to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

_____
Humes, J.

We concur:

_____
Reardon, Acting P.J.

_____
Rivera, J.