NOT DESIGNATED FOR PUBLICATION

No. 115,061

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TREQUIES JACOBS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed September 1, 2017. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., LEBEN, J., and BURGESS, S.J.

*Per Curiam*:  Trequies Jacobs was convicted by a jury of one count of possession of marijuana with the intent to distribute and one count of failure to signal while turning a vehicle. Jacobs was sentenced to 36 months' probation with an underlying prison sentence of 49 months. Jacobs appeals, arguing that (1) the trial court erred in admitting K.S.A. 60-455 evidence of his prior conviction for possession of marijuana; (2) the trial court erred in admitting pictures from his Facebook without conducting a K.S.A. 60-455 analysis; (3) the trial court erred in giving a jury instruction that eliminated any possibility for the jury to exercise its right to nullify; and (4) even if the alleged errors are

not sufficient on their own, they amount to cumulative error. Upon our review we do not find Jacobs' arguments persuasive; therefore, this matter is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

On May 8, 2014, Officers Jared Henry and Jeremy Boyd with the Wichita Police Department were traveling eastbound on 13th Street in Wichita, Kansas, around 11:30 p.m. when they passed a gold Chevrolet Impala traveling in the opposite direction. The officers would later learn that Jacobs was the driver of the Impala. When the officers passed the Impala, they saw the vehicle's front end dip down as though Jacobs had slammed on the brakes. The officers decided to turn around and follow the Impala.

The officers followed the Impala into a neighborhood off of 13th Street. The Impala then turned into the driveway of a residence; however, Jacobs only activated the car's turn signal about 10 feet before making the turn. In Kansas, drivers are required to signal a turn at least 100 feet before the turn is made. The officers activated their emergency lights and stopped the Impala. No one got in or out of the Impala before the officers made the stop.

The officers exited their patrol vehicle and approached the Impala. Officer Henry approached the driver's side of the Impala and could see Jacobs' shoulders were moving and his hands were moving around his waist area. When the officer reached the Impala, Jacobs did not have anything in his lap. Jacobs yelled at the officers and wanted to know why he was stopped. When Officer Henry advised Jacobs he was stopped for failing to adequately signal a turn, Jacobs called the officer a "liar."

Officer Henry ordered Jacobs out of the Impala. After Jacobs exited the vehicle, the officer patted Jacobs down for weapons and then asked him to sit on the curb. Jacobs refused to sit on the curb and continued to argue with the officer. Finally, Jacobs sat

2

down on the curb. Officer Henry returned to the Impala and searched the driver's side area—under the driver's seat, between the driver's seat and the door, and along the driver's seat and the center console—for any weapons. Jacobs yelled to the passengers in the car, "Don't let him search my car." Officer Henry did not see any weapons and walked back to talk with Jacobs. The officer asked Jacobs whether he had a driver's license, and Jacobs became quiet. Officer Henry asked Jacobs to walk with him to the patrol car. At that time, Jacobs began walking away from the patrol car towards the middle of the street. The officer placed his hand on Jacobs' back to direct him towards the patrol car. Jacobs told Officer Henry not to touch him. Officer Henry then advised Jacobs that he was going to be placed in handcuffs. At that point, Jacobs got away from the officer and began running.

Officer Henry chased after Jacobs and advised if Jacbos did not stop he would be tased. The officer's taser malfunctioned. Jacobs ran about 20 yards before he tripped and fell in the street. Officer Henry caught up to Jacobs, placed him in handcuffs, and walked Jacobs back to the patrol car placing him in the backseat.

There were three other passengers in the Impala. While Jacobs was in the backseat of the patrol car, the front passenger in the Impala, Jayla Reed, was arrested for providing false information. Officer Henry went to the front passenger door and observed a small baggie of marijuana between the seat and the door. The baggie appeared to be a "dime bag," which is a small baggie of marijuana that typically sells for around $10. The officers then asked the two passengers in the backseat to exit the vehicle. Officer Henry then proceeded to search the entire vehicle.

As a result of his search, Officer Henry found an additional dime bag under the front passenger seat and a large bag containing 16 individual dime bags in the center console. Jacobs was charged with possession with intent to distribute and failure to signal while turning.

3

During the course of the trial, the district court permitted the state to introduce evidence of Jacobs' prior conviction for possession of marijuana. Jacobs argued that such evidence of prior crimes violated K.S.A. 60-455. The district court ruled that the evidence was permissible in order to show plan and gave an instruction to the jury limiting the jury's consideration of that evidence for that purpose.

At trial, the district court also allowed the admission of photos from Jacobs' Facebook page which allegedly showed him smoking marijuana. This was allowed as impeachment testimony after Jacobs had claimed that he no longer was involved with marijuana after his prior conviction. There was no way to tell from the photos when the photos were taken or when they were posted to Facebook. Based on this fact, Jacobs argued that there was insufficient foundation for the admission of the photos and that the photos were irrelevant. Jacobs did not argue that the photos were inadmissible pursuant to K.S.A. 60-455.

Jacobs testified that he was not driving the Impala on the night in question. Instead, Jacobs testified that he was inside the residence and when the vehicle pulled into the driveway he went outside to smoke a cigarette. He then testified that Reed was actually in the driver's seat of the vehicle but she "jumped over" to the front passenger seat so that he could sit in the driver's seat. Jacobs testified that a police vehicle was not behind the Impala when he got into the driver's seat. Jacobs also testified that he had no knowledge of the marijuana in the Impala. Another witness, the owner of the Impala, backed up Jacobs' testimony testifying that he let Reed drive the vehicle on the night in question and Jacobs was with him inside the residence.

Despite the testimony, the jury convicted Jacobs of one count of possession of marijuana with the intent to distribute and one count of failure to signal when turning. Jacobs filed a motion for a downward dispositional and durational departure. The district court granted Jacobs' motion and sentenced Jacobs to 36 months' probation with an

4

underlying prison sentence of 49 months. Jacobs filed a timely notice of appeal. Additional facts will be introduced below.

### DID THE TRIAL COURT ERR IN ADMITTING EVIDENCE OF JACOBS' PRIOR CONVICTION FOR POSSESSION OF MARIJUANA UNDER K.S.A. 60-455?

Jacobs argues that the trial court erred in admitting evidence of his prior conviction for possession of marijuana because his past crime was not sufficiently similar to his current crime to be admissible under K.S.A. 60-455. The State asserts that Jacobs' prior offense was admissible under K.S.A. 60-455 because it is sufficiently similar to his current offense such that it is "reasonable to conclude the same individual committed both acts." K.S.A. 2016 Supp. 60-455(c).

This issue was given extensive attention in the trial court, in the briefs submitted to this court, and during oral argument. K.S.A. 60-455 issues are often complex requiring in-depth analysis. Regardless of such analysis, this matter is resolved in this case without a determination of the merits.

Even if we were to hold that the trial court abused its discretion in admitting the evidence of Jacobs' past crime, we would still be required to determine whether that error was harmless. In evaluating the harmlessness of an alleged error this court must "determine if there is a reasonable probability that the error did or will affect the outcome of the trial in light of the entire record." *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011). In making that determination, the appellate court considers the weight of other evidence against the defendant. If the other evidence of the defendant's guilt is overwhelming, it is more likely that the reviewing court will find that the alleged error was harmless. See *State v. Kleypas*, 305 Kan. 224, 257-58, 382 P.3d 373 (2016) (Holding that the defendant would have been found guilty regardless of whether the challenged

evidence would have been excluded at trial because the other evidence of the defendant's guilt was overwhelming.).

Jacobs argues that "[c]onsidering that [he] testified and offered the jury an explanation counter to the State's version of events, and another witness' testimony corroborated portions of his testimony, this [c]ourt cannot conclude that the State's case was overwhelming." However, Jacobs' furtive behaviors before exiting the Impala, his statement, "Don't let them search my car," and his attempt to run from police are all strong evidence of Jacobs' guilt. The strongest evidence against Jacobs were phone calls that he made from the jail that contradict his theory of defense and implicate his guilt. In one call, an individual asks Jacobs, "Where the other stuff that you done bagged up already?" Jacobs responded, "That was what was in the car." In another call, an individual asks Jacobs, "So did they find the weed?" To which Jacobs responded, "I guess. I guess." In yet another call, Jacobs asks an individual, "They found what was in the car?" The phone calls demonstrate Jacobs was aware of what was in the car, despite his theory of defense.

The evidence of Jacobs' guilt is overwhelming. Accordingly, any error in admitting the K.S.A. 60-455 evidence of Jacobs' past crime is harmless in light of the entire record. Thus, even if we were to hold that the trial court erred in admitting the evidence, Jacobs would not be entitled to relief.

### DID THE TRIAL COURT ERR IN ADMITTING PICTURES FROM JACOBS' FACEBOOK WITHOUT PERFORMING THE ANALYSIS REQUIRED FOR ADMITTING EVIDENCE UNDER K.S.A. 60-455?

Jacobs argues that the trial court abused its discretion in ruling that the challenged evidence was admissible because it rebutted his testimony. Jacobs argues that the evidence was actually inadmissible K.S.A. 60-455 evidence and that the trial court erred in circumventing the required K.S.A. 60-455 analysis. The State argues that this issue is

not properly before the court on appeal because Jacobs did not lodge a K.S.A. 60-455 objection before the trial court.

As with Jacobs' first issue on appeal, this matter was given great attention in the district court, in the parties' briefs, and during oral argument. Just as with the first issue Jacobs raised on appeal, the district court's decision to admit this evidence ultimately makes no difference to the outcome of this appeal. As has been shown, the evidence against Jacobs was overwhelming. Even if this court were to find that the district court's decision to admit the evidence was in error, it was harmless error.

## DID THE TRIAL COURT COMMIT CLEAR ERROR BY INSTRUCTING THE JURY IN SUCH A WAY THAT THE JURY COULD NOT EXERCISE ITS RIGHT TO NULLIFY?

Jacobs argues that the trial court instructed the jury in a way that it impermissibly discouraged jury nullification. He asserts that the trial court "misstated the law regarding the jury's obligation to enter a guilty verdict." Jacobs further asserts there is a real possibility that the jury would have reached a different verdict but for the trial court's alleged misstatement of the law. Jacobs specifically challenges jury instruction No. 2, which read:

> "The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.
> "The test you *must* use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you *must* find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find the defendant guilty." (Emphasis added.)

*Standard of Review*

An appellate court reviewing a challenge to a jury instruction will employ the following analysis:

> """(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" [Citation omitted.]" *State v. Fisher*, 304 Kan. 242, 256-57, 373 P.3d 781 (2016).

*Preservation*

Jacobs admits that he did not object to the challenged instruction at trial. But Jacobs' failure to object is not fatal to his claim. K.S.A. 2016 Supp. 22-3414(3) states:

> "No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or failure to give an instruction is clearly erroneous."

Accordingly, this court reviews an instruction challenged without objection for clear error. *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012). To establish clear error, "'the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016).

*The Challenged Instruction Was Legally Appropriate*

This court must first determine whether the challenged instruction was legally appropriate. Jacobs argues that the instruction was not legally appropriate because it discouraged the jury from exercising its power of jury nullification.

Our Supreme Court has established that "[j]uries possess the power to decide a case in a manner which is contrary to the applicable facts and law, *i.e.*, the power of jury nullification. However, a defendant is not entitled to have the jury instructed on the power of nullification." *State v. Naputi*, 293 Kan. 55, Syl. ¶ 4, 260 P.3d 86 (2011). In *Silvers v. State*, 38 Kan. App. 2d 886, 888, 173 P.3d 1167 (2008), our court offered the following remarks in regard to jury nullification:

> "'A jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness.' [Citation omitted.]"

Here, Jacobs is not arguing that a jury nullification instruction should have been given. Instead, Jacobs asserts that the reasonable doubt instruction given foreclosed any opportunity the jury may have had to exercise its power of jury nullification. Our Supreme Court has faced similar arguments before.

In *State v. Lovelace*, 227 Kan. 348, 607 P.2d 49 (1980), *overruled in part by State v. Smith-Parker*, 301 Kan. 132, 340 P.3d 485 (2014), the defendant challenged a reasonable doubt jury instruction. The jury instruction read: "If you have no reasonable doubt as to the truth of any of the claims made by the State, you *must* find the defendant guilty as charged." (Emphasis added.) *Lovelace*, 227 Kan. at 354. The defendant argued that the trial court erred when it gave the instruction because it was worded "in terms of a mandatory adjudication of guilt." 227 Kan. at 354. The relevant pattern jury instruction,

9

which the challenged instruction was based on, used the word "should" in place of more commanding language, such as "must." The *Lovelace* court held that "the two words [must and should] can be used interchangeably in criminal instructions. Both convey a sense of duty and obligation." 227 Kan. at 354. The court upheld the instruction, holding that there is "no substantial difference in the two and what differences there may be could very well be in appellant's favor." 227 Kan. at 354.

In *Smith-Parker*, however, our Supreme Court overruled *Lovelace*. The court reviewed another reasonable doubt jury instruction in *Smith-Parker*, which read: "If you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you *will* enter a verdict." 301 Kan. at 163. The court overruled *Lovelace*, holding that

> "[b]oth the wording of the instruction at issue in *Lovelace*—'must'—and the wording at issue here—'will'—fly too close to the sun of directing a verdict for the State. A judge cannot compel a jury to convict, even if it finds all elements proved beyond a reasonable doubt." 301 Kan. at 164.

Here, Jacobs attempts to equate the jury instruction given in his case with the instruction struck down in *Smith-Parker*. First, Jacobs argues that "should" is a synonym for "must." He then argues that "[i]f instructing the jury that it 'must' enter a guilty verdict is error, and 'should' is a synonym for 'must,' then it is also error to instruct a jury that, in the absence of reasonable doubt, it 'should' find the defendant guilty." In *State v. Allen*, 52 Kan. App. 2d 729, 372 P.3d 432 (2016), *rev. denied* April 17, 2017, this court faced the same argument advanced by Jacobs.

In *Allen*, this court applied the holding from *Smith-Parker* to uphold a jury instruction that read:

10

"'If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you *must* find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find the defendant guilty.'" (Emphasis added.) 52 Kan. App. 2d at 733.

Thus, the *Allen* court analyzed the exact instruction at issue in Jacobs' appeal. Like Jacobs, the defendant in *Allen* argued that the instruction "eliminated the possibility of jury nullification." 52 Kan. App. 2d at 735. The *Allen* court upheld the jury instruction, despite the defendant's argument. The court acknowledged the difference between "must" and "should," holding that "'unlike the words must, shall, and will, the word should does not express a mandatory, unyielding duty or obligation; instead, it merely denotes the proper course of action and encourages following the advised path.' [Citation omitted.]" 52 Kan. App. 2d at 735.

Even so, Jacobs argues that the reasonable doubt instruction was clearly erroneous when read in conjunction with jury instruction No. 10, in which the trial judge informed the jury that its "verdict *must* be founded entirely upon the evidence admitted and the law as given in these instructions." (Emphasis added.) This court has held that "the rule that the jury must consider the evidence and law while making its determination applies when the jury finds the defendant guilty, when the jury finds the defendant not guilty, and *when the jury nullifies the verdict.*" *State v. Mitchell-Boyles*, No. 114,799, 2017 WL 129949, at *12 (Kan. App. 2017) (unpublished opinion), *rev. denied* June 29, 2017. Accordingly, the jury instruction informing the jury that it must follow the law as given in the instructions has no bearing on whether the reasonable doubt instruction was clearly erroneous.

In accordance with *Allen,* the use of should in a reasonable doubt instruction is not clearly erroneous, even when the jury is instructed that its "verdict *must* be founded entirely upon the evidence admitted and the law as given in these instructions." (Emphasis added.) There is a recognizable distinction between the use of should and

11

must. The former implies a suggestion, while the latter implies a command. Jacobs has failed to show that the instruction was not legally appropriate. The trial court did not err in providing the reasonable doubt instruction.

## DO JACOBS' ALLEGED ERRORS AMOUNT TO CUMULATIVE ERROR?

Finally, Jacobs argues that even if none of the alleged errors are sufficient on their own to require reversal, we still must reverse his convictions based on the cumulative effect of the errors. Jacobs relies on the cumulative error doctrine in making his argument.

The cumulative error doctrine requires this court to determine whether the totality of the circumstances demonstrates that Jacobs was substantially prejudiced and denied his right to a fair trial. *State v. Dixon*, 289 Kan. 46, 71, 209 P.3d 675 (2009). The doctrine does not apply if no error or only one error supports reversal. 289 Kan. at 71 (citing *State v. Carter*, 284 Kan. 312, 332, 160 P.3d 457 [2007]). Also, "[n]o prejudicial error may be found under the cumulative error doctrine if the evidence against the defendant is overwhelming." 289 Kan. at 71 (citing *State v. Cosby*, 285 Kan. 230, Syl. ¶ 9, 169 P.3d 1128 [2007]).

Here, Jacobs has failed to prove that the trial court erred such that he was substantially prejudiced and denied his right to a fair trial. Where no error is found, it is impossible for cumulative error to exist. Moreover, the evidence in this case is overwhelming. Thus, no prejudicial error may be found, and Jacobs is not entitled to relief under the cumulative error doctrine.

Affirmed.