NOT DESIGNATED FOR PUBLICATION

No. 117,579

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHANE WILLIAM CARPENTER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Greenwood District Court; MICHAEL E. WARD, judge. Opinion filed July 27, 2018. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., PIERRON and MALONE, JJ.

PER CURIAM: A jury convicted Shane Carpenter of one count of distribution of methamphetamine and one count of possession of methamphetamine. Carpenter appeals, arguing: (1) the district court erred in instructing against jury nullification; (2) the evidence was not sufficient to support his convictions; and (3) the district court erred in using his prior criminal convictions in sentencing him. Finding no error, we affirm.

Sergeant Jason Meyers of the Greenwood County Sheriff's Office had heard that Robin Davidson was selling methamphetamine in Greenwood County and was waiting

for an opportunity to talk to him. Meyers got that opportunity when Davidson was detained for altering a Vehicle Identification Number (VIN) on a motorcycle. When Meyers questioned Davidson about the altered VIN, Davidson offered to talk about his involvement in selling methamphetamine and suggested he could help Meyers arrest other drug dealers. Davidson mentioned Carpenter as someone from whom he could buy methamphetamine. He ultimately signed a cooperating individual agreement, and the State never prosecuted him for the altered VIN.

On November 6, 2015, Sgt. Meyers met with Davidson to set up a controlled buy. Davidson called Carpenter to "find out if he was still good to make a deal." Meyers listened in on the call. He had trouble understanding what Carpenter said, but he heard Davidson ask Carpenter if he had a digital scale for weighing.

Davidson made arrangements to go to Carpenter's house and buy methamphetamine. Sgt. Meyers and another officer strip-searched Davidson to make sure he had no contraband on him. They gave him $100 in cash to buy 1 gram of methamphetamine. Meyers dropped Davidson off about half a block from Carpenter's house and watched him walk to Carpenter's front door. Two other officers were parked about a block away to watch the transaction.

Sgt. Meyers saw Davidson go into Carpenter's house. While Davidson was in the house, Meyers could not see what was happening or if anyone came in or out of the back door. Davidson was wearing a recording device, but the recording did not have anything notable on it. About 13 minutes later, Davidson came out of the house and returned to Meyer's car. He handed Meyers two plastic baggies with a white crystal substance inside. Davidson told Meyers he had given Carpenter the $100 in exchange for methamphetamine. The substance later tested positive for methamphetamine.

On November 10, 2015, Davidson suggested he could buy again from Carpenter. Sgt. Meyers and another officer strip-searched Davidson, gave him another $100 in cash, and placed a body wire on him. Officers dropped Davidson off near Carpenter's house and watched him walk inside. While Davidson was inside, Meyers heard Davidson and Carpenter talking about needing to leave the house to get methamphetamine.

About 10 minutes later, Davidson and Carpenter left Carpenter's house. Sgt. Meyers followed them on foot for about 10 minutes, but he could not see them the entire time. After walking about 5 or 6 blocks, Davidson and Carpenter split up. Meyers continued to follow Davidson. During this time, Meyers did not see anyone else meet with Davidson, but Meyers also lost sight of him at times. Carpenter met back with Davidson, and they returned to Carpenter's house. Carpenter went inside and Davidson kept walking. Meyers lost sight of Davidson again. Davidson eventually met with the officers and turned over a plastic bag with a white crystal substance in it. The substance later tested positive for methamphetamine.

On February 24, 2016, officers executed a search warrant on Carpenter's house. A deputy found a plastic baggie with white residue in Carpenter's pants pocket. The residue later tested positive for methamphetamine. While the residue was visible, a forensic scientist testified that someone could not tell whether it was methamphetamine just by looking at it.

The State charged Carpenter with two counts of unlawful distribution of methamphetamine, a level 4 drug felony, and one count of unlawful possession of methamphetamine, a level 5 drug felony.

At trial, Davidson testified he had made two controlled buys from Carpenter and both times he got methamphetamine in a plastic bag in exchange for money. He did not specifically remember the details of the November 6 controlled buy because Carpenter

was his friend and he had been to Carpenter's house many times. He stated it was "just the same routine that we did." He explained the routine with the officers was to "meet back at where they dropped me off at or another location where they said and give them what I bought and [the] recording device and go be strip-searched again." He said he got methamphetamine from Carpenter at Carpenter's house on the first buy, but Carpenter had to leave the house to go get it.

As for the buy on November 10, Davidson remembered leaving Carpenter's house with Carpenter. According to Davidson, Carpenter always had to go get methamphetamine from somewhere else. He explained that he gave Carpenter money before they split up, and Carpenter returned with methamphetamine that he then gave to Davidson.

The jury convicted Carpenter of one count of distribution and one count of possession. The jury acquitted him of the second count of distribution based on the events of November 10, 2015. The district court sentenced Carpenter to 49 months' imprisonment for distribution, and a concurrent 11-month sentence for possession. Carpenter appeals.

*Jury Instructions*

Carpenter first challenges the district court's concluding jury instruction, Instruction No. 8. This instruction told the jury, in part, "Your verdicts must be founded entirely upon the evidence admitted and the law as given in these instructions." Carpenter asserts this instruction impermissibly prohibited jury nullification. The State responds that the appellate court has already concluded this instruction is not erroneous, citing *State v. Moss*, No. 113,034, 2016 WL 3856824 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1327 (2017).

4

"When analyzing jury instruction issues, an appellate court follows a three-step process by: (1) Determining whether the appellate court can or should review the issue, *i.e.,* whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits to determine whether error occurred; and (3) assessing whether the error requires reversal. *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015). Whether a party has preserved a jury instruction issue affects the reversibility inquiry at the third step. 302 Kan. at 752; see also K.S.A. 2015 Supp. 22-3414(3) ('No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous.')" *State v. Louis*, 305 Kan. 453, 457, 384 P.3d 1 (2016).

At trial, Carpenter objected to the district court's use of Instruction No. 8, arguing "should" was more appropriate than "must." Since Carpenter properly preserved this issue, we will consider whether any error occurred below. We are required to consider whether the instruction was legally appropriate, using an unlimited review of the record. 305 Kan. at 457.

*Instruction No. 8 was Legally Appropriate*

Carpenter claims Instruction No. 8 was not legally appropriate because the word "must" incorrectly informed the jury it could not nullify the verdict. Jury nullification is the inherent power of juries "to disregard the rules of law and evidence in order to acquit the defendant based upon the jurors' sympathies, notions of right and wrong, or a desire to send a message on some social issue." *State v. Allen*, 52 Kan. App. 2d 729, 734, 372 P.3d 432 (2016), *rev. denied* 306 Kan. 1320 (2017). Jury nullification is always a possibility. *Silvers v. State*, 38 Kan. App. 2d 886, 890, 173 P.3d 1167 (2008). Even so, our Supreme Court has held that the district court must not instruct on jury nullification. *State v. McClanahan*, 212 Kan. 208, ¶¶ 3, 4, 510 P.2d 153 (1973). On the other hand, our Supreme Court has also held the district court may not instruct against nullification nor compel a jury to convict. *State v. Smith-Parker*, 301 Kan. 132, 164, 340 P.3d 485 (2014).

5

Instruction No. 8 is legally appropriate because it neither forbids nor encourages jury nullification. This instruction comes directly from PIK Crim. 4th 68.010, and it describes the jury's duty to consider the admitted evidence and stated law in reaching a verdict. This duty exists "when the jury finds the defendant guilty, when the jury finds the defendant not guilty, and *when the jury nullifies the verdict*." *State v. Mitchell-Boyles*, No. 114,799, 2017 WL 129949, at *12 (Kan. App. 2017) (unpublished opinion), *rev. denied* 306 Kan. 1327 (2017). This instruction is consistent with K.S.A. 22-3403(3), which states that "[w]hen the trial is to a jury, questions of law shall be decided by the court and issues of fact shall be determined by the jury." Likewise, it is consistent with K.S.A. 2017 Supp. 60-247(d), which states that "jurors *must* swear or affirm to try the case conscientiously and *return a verdict according to the law and the evidence*." (Emphasis added.) See *Moss*, 2016 WL 3856824, at *17. As a result, many panels of this court have found that the instruction at issue does not impermissibly preclude jury nullification. See, e.g., *State v. Trotter*, No. 114,753, 2017 WL 3668908, at *3-5 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 993 (2018); *Mitchell-Boyles*, 2017 WL 129949, at *12-13; *Moss*, 2016 WL 3856824, at *17.

Carpenter relies on *Smith-Parker* to support his argument that Instruction No. 8 discouraged jury nullification. The *Smith-Parker* court held that an instruction telling jurors "[i]f you do not have a reasonable doubt . . . that the State has proven murder in the first degree. . . , then you *will* enter a verdict of guilty" was clearly erroneous. 301 Kan. at 163-64. The court found that this use of "will" comes too close to directing a verdict in favor of the State. 301 Kan. at 164. The court similarly disapproved of the word "must" in a reasonable doubt instruction. 301 Kan. at 164.

Carpenter tries to draw a parallel between the *Smith-Parker* holding and Instruction No. 8, but this comparison is inapt. In *Smith-Parker*, the court addressed the use of "must" and "will" in the context of a reasonable doubt instruction. The reasonable

6

doubt instruction tells a jury what to do once it has decided the State has met its burden of proof. In *Smith-Parker*, that instruction ordered the jury to return a guilty verdict. On the other hand, Carpenter's challenged instruction simply informs the jury what to consider in deciding whether the State has met its burden—"the evidence as admitted and the law as given in these instructions." Thus, "the challenged instruction does not directly implicate jury nullification in the same way as the language found wanting in *Smith-Parker*." *Trotter*, 2017 WL 3668908, at *4.

Furthermore, as the State points out, Carpenter's proposed change to the jury instruction would lead to other problems. At trial, Carpenter suggested that the district court should replace "must" with "should." As the *Trotter* court explained: "The use of 'should' in the instruction would simply inform jurors they can (but need not) confine the boundaries of their deliberations to the admitted evidence and the stated law, fostering the notion they could investigate on their own by visiting a relevant place or exploring on the internet." 2017 WL 3668908, at *4.

*Sufficiency of the Evidence*

Carpenter argues the evidence was insufficient to support his convictions for distribution and possession of methamphetamine. He contends that "no rational factfinder could have found Davidson's testimony sufficient to sustain a conviction for distribution of methamphetamine." He also asserts that the circumstantial nature of the evidence required the jury to engage in inference stacking to convict him. The State does not directly address Carpenter's allegations of inference stacking but generally argues the evidence was sufficient to support Carpenter's convictions.

"'When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.' [Citation

7

omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). "'In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. [Citations omitted.]'" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

Circumstantial evidence may support a verdict, if that evidence provides a basis for the fact-finder to make a reasonable inference about the fact in issue. Circumstantial evidence, to be sufficient, need not exclude every other reasonable conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). If the State relies solely on circumstantial evidence to support a conviction, it must prove the circumstances themselves and it cannot ask the jury to infer or presume circumstances from other circumstances. Asking the jury to make a presumption based on another presumption is known as "inference stacking," and it cannot support a conviction. *State v. Banks*, 306 Kan. 854, 859, 397 P.3d 1195 (2017).

### *Distribution of Methamphetamine*

Carpenter challenges the evidence supporting his conviction for unlawful distribution of methamphetamine. He states the only direct evidence of this crime was Davidson's testimony. He argues Davidson's testimony about the controlled buy was sparse, and "no rational juror would have found Davidson's testimony, alone, sufficient to convict [him]."

Carpenter then asserts that Sgt. Meyer's testimony about this buy provided no direct evidence and required the jury to engage in inference stacking. He highlights that Meyers testified he gave Davidson money, he saw Davidson go into Carpenter's home,

and then Davidson returned with methamphetamine. According to Carpenter, this required the jury "to first infer that Davidson obtained the methamphetamine when he was inside the house and, second, to infer that [Carpenter] gave Davidson this methamphetamine" to reach a guilty verdict.

The flaw in Carpenter's argument is the jury did not have to rely solely on Davidson's testimony or solely on Sgt. Meyers' testimony. The jury could consider both witnesses' testimony together in reaching a verdict. While Davidson's testimony lacked detail, his testimony was not so incredible that no reasonable fact-finder could rely on it in reaching a verdict. Davidson testified he went to Carpenter's house on two occasions to buy methamphetamine from Carpenter, but he could not remember all the details because he had been to Carpenter's house many times before. Meyers' testimony corroborated some of Davidson's testimony and established that the first buy took place on November 6. And while Meyers could not testify directly to what happened when Davidson was in Carpenter's house, Davidson's testimony filled in this gap. Ultimately, Carpenter's conviction for this charge comes down to a determination of Davidson's and Meyers' credibility, a job for the jury, not us.

*Possession of Methamphetamine*

Carpenter claims the State required the jury to engage in inference stacking to convict him of possession of methamphetamine. Carpenter states that "[t]he residual amount of methamphetamine in the baggie found in [his] pocket was not detectable to the naked eye." He contends that in order for the jury to conclude he intentionally possessed this residual amount, it had to infer his intent "because (1) he had been engaged in drug-related activity in the past, and (2) officers found the baggie in his pocket." According to Carpenter, this was impermissible inference stacking.

9

To begin with, Carpenter is incorrect when he says the residue in the baggie could not be seen with the naked eye. Trial testimony established the white residue was visible, but an observer would not be able to tell it was methamphetamine just by looking at it.

That said, the scenario Carpenter describes is not inference stacking because the State proved the circumstances themselves. First, the State put on evidence that Carpenter was familiar with drug-related activity. Davidson admitted being involved in drug sales almost his entire life and stated he knew Carpenter. Davidson also testified Carpenter sold him methamphetamine, and the methamphetamine he bought was in plastic baggies. Meyers testified he overheard Davidson and Carpenter talking about digital scales and going to another location to buy methamphetamine. Second, the State presented testimony from an officer who said he found the plastic baggie in Carpenter's pocket. As a result, the jury did not have to stack inferences here. Instead, it had two circumstances from which it could draw the same inference.

If Carpenter is arguing the circumstantial evidence cannot support his conviction, this argument also fails. The jury convicted Carpenter of unlawful possession of a controlled substance under K.S.A. 2017 Supp. 21-5706. "'Possession' means having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2017 Supp. 21-5701(q). Carpenter's primary contention at trial was the State had failed to prove he knew the white residue in the plastic baggie was methamphetamine.

In *Allen*, the court held that circumstantial evidence was enough to show the defendant knowingly possessed a residual amount of methamphetamine. A police officer stopped Allen and found "a scale with 'a white powdery residue on it'" in Allen's truck. 52 Kan. App. 2d at 730. Testing confirmed the powder was methamphetamine. A jury convicted him of possession of methamphetamine. Allen appealed, arguing the State

10

failed to prove he knowingly possessed the drug. He claimed because the officer "discovered only a small amount of methamphetamine residue on the scale, the residue constituted an oversight on his part and not something he knowingly possessed." 52 Kan. App. at 732. The *Allen* court rejected this argument, noting trial testimony showed the residue was visible to the naked eye. The court held that because the officer found the scale in Allen's truck, sufficient evidence supported "the conclusion that Allen knew about and controlled the methamphetamine residue." 52 Kan. App. 2d at 733; see also *State v. Rooney*, No. 116,539, 2017 WL 3948438, at *3 (Kan. App. 2017) (unpublished opinion) (holding jury could reasonably infer defendant knowingly possessed methamphetamine residue in baggie because the baggie was in her possession, she was familiar with drug activity, and she knew there was a substance in baggie).

Likewise, Carpenter had a plastic baggie with white powder residue in his pants pocket. The residue was visible to the naked eye. Carpenter also associated with a drug dealer and drug activity. He had either sold Davidson methamphetamine in a plastic baggie or been present when Davidson acquired methamphetamine in one. A jury could reasonably infer from these circumstances that Carpenter knew about and controlled the methamphetamine residue in his pocket. When viewed in the light most favorable to the State, sufficient evidence supports Carpenter's convictions.

*Sentencing*

Carpenter argues the district court violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it increased his sentence based on his criminal history without first requiring the State to prove his criminal history to a jury beyond a reasonable doubt. He did not object to the use of his criminal history in this way, but the Kansas Supreme Court has held that appellate courts can consider the application of *Apprendi* for the first time on appeal. *State v. Anthony*, 273 Kan. 726, 727, 45 P.3d 852 (2002). Carpenter concedes that the Kansas Supreme Court has already

11

rejected this argument in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). He raises it now to preserve it for possible federal review.

We are duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). There is no such indication here. The district court thus did not err in using Carpenter's criminal history without first requiring the State to prove it beyond a reasonable doubt to a jury.

Affirmed.