Filed 6/16/25  P. v. Young CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085710 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FVI19002410) |
| ARI AKI YOUNG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Miriam I. Morton, Judge.  Affirmed.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Elizabeth M. Renner, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Ari Aki Young appeals a judgment following his jury conviction of gross negligent discharge of a firearm (Pen. Code,[1] § 246.3, subd. (a)). The trial court sentenced Young to 16 months, deemed served in consideration of the custody credits he had accrued as of that date.

On appeal, Young argues the trial court erred in failing to give two instructions to the jury. First, he contends the court should have informed the jury of the People's burden to prove he did not act in self-defense. We disagree. The trial court had no sua sponte duty to instruct the jury because there was no evidence Young acted in self-defense when discharging the firearm. Young's second claim of error is that the jury should have been informed of the need to agree upon which of two gunshots it based its guilty verdict. Contrary to Young's assertion, however, the continuous course of conduct exception is a valid exception to the unanimity requirement and is applicable to the facts of this case.

Finally, we conclude that Young forfeited his claim under the Racial Justice Act (RJA) and that he failed to show how his trial counsel's performance was deficient. We affirm.

FACTS AND PROCEDURAL BACKGROUND

In September 2019, Young's mother called 911 and stated, "Oh my God. Please send somebody, please. Oh my gosh, send somebody, please." She said she wanted her 21-year-old son removed from her home. As a sheriff's deputy arrived, Young and his mother walked out the front door. Young's mother appeared "scared" and was holding a knife. Young "beelined directly towards" the deputy, who was unsure of what was going on, but understood from the call he was the suspect.

---

[1] Unless specified, further statutory references are to the Penal Code.

The deputy talked to Young, asked what was going on and attempted to perform a cursory search for weapons. When she went to place her hands on Young's back to conduct a pat down search, he threatened to "headbutt" her. Young then became physically aggressive, and the deputy radioed for backup. She told him to stop fighting and get on the ground, but he grabbed hold of her wrist. In a "necessary escalation," the deputy grabbed her collapsible baton and extended it to its full length. Young, however, grabbed it from her and threw it onto the nearby gravel. Young then grabbed the back of the deputy's hair and began pulling her head down and punching her in the face.

Young began punching the deputy in the side of the face and head repeatedly. The deputy felt like she was beginning to lose consciousness and, fearing that she would lose the fight, removed her firearm from its holster. The deputy told Young twice that she would shoot him in an attempt to defuse the situation and make Young stop hitting her. The deputy then lost her footing in the gravel and fell onto her back, still holding her firearm. Young continued to hit her as she fell to the ground. The deputy testified she fired her weapon towards Young's head when he was "on top of" her because she "knew" she "was going to die if [she] did not." The gunshot missed Young, and then Young pinned her hand, still holding the firearm, in the gravel, where it discharged into the ground.

Young and the deputy fought over the gun and Young managed to pry it out of her hand. As the deputy turned and fled to the cover of nearby houses, Young pulled the slide on her gun back and fired it. Meanwhile, three other patrol vehicles arrived on the scene. Still carrying the deputy's gun, Young walked towards the arriving deputies, raised both hands and fired the gun straight up. While the arriving deputies shouted, "drop the gun," they shot Young.

The district attorney charged Young with attempted murder of a peace officer (§ 664/187, subd. (a)) and assault with a firearm upon a peace officer (§ 245, subd. (d)(1)). Both these counts carried additional allegations that Young personally and intentionally discharged a handgun (§ 12022.53, subd. (c)), and personally used a handgun (§ 12022.53, subd. (b)), during the commission of the offense. The information also charged Young with resisting an executive officer (§ 69), resisting an officer by removing her firearm (§ 148, subd. (c)), discharging a firearm with gross negligence, a serious felony (§§ 246.3, subd. (a), 1192.7, subd. (c)(2), and battery with injury on a peace officer (§ 243, subd. (c)(2)).

A jury found Young guilty of discharging a firearm with gross negligence and acquitted him of attempted murder and assault with a firearm on a peace officer. After further deliberations, the jury was not able to reach verdicts on the charges for resisting arrest and battery on a peace officer. The trial court then dismissed those remaining counts in the interest of justice. Young was sentenced to 16 months with credit for time served.

DISCUSSION

I.

*The Trial Court's Duty to Instruct on Self-Defense and Unanimity*

Young contends that the trial court erred by failing to instruct the jury that: (i) the People must establish Young was not acting in self-defense when he discharged the firearm, and (ii) the jury must agree unanimously upon which gunshot to base a guilty verdict. We disagree.

A. *Additional Procedural Background*

The parties discussed jury instructions in chambers and did not mention instructions relating to discharging a firearm with gross negligence in pretrial briefing or on the record.

4

At the close of evidence, the trial court instructed the jury with a modified version of CALCRIM No. 970 without the self-defense element:

"The defendant is charged . . . with shooting a firearm in a grossly negligent manner in violation of Penal Code section 246.3.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1.    The defendant intentionally shot a firearm;

"2.    The defendant did the shooting with gross negligence;

"AND

"3.    The shooting could have resulted in the injury or death of a person;

"Gross negligence involves more than ordinary carelessness, inattention, or mistakes in judgment. A person acts with gross negligence when:

"1.    He or she acts in a reckless way that creates a high risk of death or great bodily injury[ ]

"AND

"2.    A reasonable person would have known that acting in that way would create such a risk.

"In other words, a person acts with gross negligence when the way he acts is so different from the way an ordinarily careful person would act in the same situation that his or her act amounts to disregard for human life or indifference to the consequence of that act."

In closing argument, the prosecution did not address the count of discharging a firearm with gross negligence.  Young's trial counsel argued Young fired two shots: the first, in a northeast direction that hit the garage,

5

that was in a different direction than where the deputy was running and second, into the air as officers were arriving. As to the shot into the garage, counsel said: "He's not aiming at her. He's not going in her direction. Nothing." He additionally argued, regarding the attempted murder count:

> "Mr. Young had no intent to kill anyone. I mean think about it. The gun was working perfectly. He got up. He could just start blasting her right there. If I want to kill here, I'm going to just start blasting her right there.

> "He didn't. He intentionally goes backwards and then turns and pivots northeast and walks into the street and fires. And she has gone the other way. There's no intent to kill. He could have easily changed direction. In fact, he never even looks at her. He never looks at her. Never."

Young's trial counsel went on to argue that as soon as Young gained control of the gun, the deputy "may be scared, but Mr. Young is no longer paying attention to her" and, "[a]s soon as he backs up and pivots northeast, he's not paying attention to [the deputy]. She's gone. It's not about her. It's not about her."

As far as the shot into the air, counsel argued that Young, "has no desire to harm anybody. His hands go straight up. He's headed to the police." Counsel explained:

> "He fires into the air. I don't know. Maybe he's scared, too. But everyone that testified said that it went straight up into the air. It wasn't tilted down."

In conclusion, counsel argued that Young was guilty of gross negligent discharge of a firearm, but nothing else:

> "And remember, with the unlawful detention we're done with two, three, four and six, which leaves us with five. Do you know what that one was? Does anyone remember what Mr. Young is charged with? It is negligent discharge of a firearm. Find him guilty of that. That's what he did.

"I'm not going to sit here and snow you guys. He shot the gun in the direction where, God, it could have, you know, hurt somebody. And he shot the one in the air that could have hurt someone, too.

"That doesn't require lawful performance of duties. So I'm not going to sit here and make up some BS argument. He did that, and that's what he should be convicted of in this case, because that's what he did."

Counsel then again requested the jury find Young guilty of discharging the firearm with gross negligence, but not guilty on the other counts.

B. *The Court Had No Sua Sponte Duty to Instruct on Self-Defense*

A trial court must instruct on the law applicable to the case. (*People v. Ponce* (1996) 44 Cal.App.4th 1380, 1386.) However, the trial court must only give instructions supported by substantial evidence and may properly refuse requested defense instructions on any theory not supported by the evidence. (*Ibid.*) In instructing the jury on the count of discharging a firearm with gross negligence, the court has a *sua sponte* duty to instruct on the fourth element of CALCRIM No. 970—that the People must prove the defendant did not act in self-defense or defense of someone else—if "there is sufficient evidence of self-defense or defense of another . . . ." (Bench Notes to CALCRIM No. 970 (2025).) "In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence, but only whether 'there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt . . . .' [Citations.]" (*People v. Salas* (2006) 37 Cal.4th 967, 982–983.)

Here, contrary to Young's assertion, there was no "substantial evidence" presented at trial Young acted in self-defense. Under his own

version of events, Young fired shots in the air, not at the deputies, and there was no evidence anyone other than Young was the initial aggressor. Young now claims the first shot "was fired as a warning shot," yet concedes the deputy was running away from him when he fired it. Moreover, before firing the gun, Young had repeatedly punched the deputy in the head and disarmed her while she begged "please, please, please." Then, as deputies approached in their patrol cars, Young fired again into the sky. Young and his counsel never explained why Young fired shots in the air, although his counsel argued Young's motivation "maybe" was because he was "scared."

Young's only statements about the shooting admitted at trial were when he told a deputy, "She assaulted me, and you guys win," and when he told another deputy at the hospital, "I didn't shoot at you. I shot into the air." There is no evidence in the record Young claimed to fire the gun as a warning, or in self-defense. Therefore, we conclude there was not substantial evidence that Young acted in self-defense. (See *People v. Odell* (2023) 92 Cal.App.5th 307, 321 (*Odell*) ["The trial court rightly declined to instruct on self-defense because no evidence suggested [the defendant] actually believed he was in danger."].

Because there was not substantial evidence in support of the self-defense instruction, the trial court had no duty to give it.

C. *Any Error Was Harmless*

Moreover, even if the trial court had erred in not instructing the jury on this fourth element, we would conclude it was not prejudicial. "[A]n erroneous instruction that omits an element of an offense is subject to harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18. [Citations.] In general, the *Chapman* test probes 'whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the

8

verdict obtained." [Citations.]' [Citation.]" (*People v. Gonzalez* (2012) 54 Cal.4th 643, 662–663.) Thus, "even when jury instructions completely omit an element of a crime, and therefore deprive the jury of the opportunity to make a finding on that element, a conviction may be upheld under *Chapman* where there is no 'record . . . evidence that could rationally lead to a contrary finding' with respect to that element. [Citations.]" (*People v. Davis* (2005) 36 Cal.4th 510, 564.)

As discussed, there was no evidence Young acted in self-defense and his trial counsel argued to the jury he was guilty. Thus, reversal is not required because it is " 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " (*People v. Brown* (2023) 14 Cal.5th 453, 473.)

D. *No Unanimity Instruction Was Required*

The state and federal constitutions require unanimous verdicts. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132; *Ramos v. Louisiana* (2020) 590 U.S. 83.) "As a general rule, when violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged, either the state must select the particular act upon which it relied for the allegation of the information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty." (*People v. Jennings* (2010) 50 Cal.4th 616, 679.) "This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' " (*Russo*, at p. 1132.) "On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the

9

basis or, as the cases often put it, the 'theory" whereby the defendant is guilty." (*Ibid*.)

Thus, there are several exceptions to the general rule. "For example, no unanimity instruction is required if the case falls within the continuous-course-of-conduct exception, which arises 'when the acts are so closely connected in time as to form part of one transaction' [citation], or 'when the statute contemplates a continuous course of conduct or a series of acts over a period of time.' [Citation.] There also is no need for a unanimity instruction if the defendant offers the same defense or defenses to the various acts constituting the charged crime." (*Jennings*, *supra*, 50 Cal.4th at p. 679.)

Here, the evidence showed Young fired the two shots within seconds of one another. Young pulled the slide on the gun back and fired it as the deputy ran for cover. Within 10 seconds, as patrol vehicles pulled up to Young as he was still holding the same weapon in the same area, Young shot the gun straight up into the air. At trial, counsel argued Young was guilty of discharging the gun with gross negligence in both circumstances. Therefore, Young's firing of the weapon was a continuous course of conduct and the defense, or lack thereof in this case, was the same for both counts. His claim of error fails.

Similarly, in *People v. Flores* (2007) 157 Cal.App.4th 216, the defendant fired seven rounds from a semiautomatic handgun outside of an apartment complex, striking two parked vehicles and the door to an apartment complex. (*Id*. at p. 219.) He admitted to firing the gun "up in the air" to scare people who disrespected him and admitted that he "might have just popped" a vehicle as he was raising the gun skyward. (*Ibid*.) The Court of Appeal held that the trial court "had no obligation to give a unanimity instruction" because the gunshots were part of a continuous course of conduct: witnesses

"heard 'gunshots' without indicating a significant delay" between shots, the location of the casings suggested the defendant "repeatedly fired the gun while standing in one location," and the defendant used the same defense for each gunshot. (*Id.* at pp. 222–223.)

Young argues that cases applying the continuous-course-of-conduct exception are "outdated" and "no longer good law" after *Ramos*. But as we explained in *People v. Wilson* (2020) 56 Cal.App.5th 128, *Ramos* "held that the Sixth Amendment's unanimity requirement applies to criminal trials in state courts. Given California's existing requirement of a unanimous verdict, the Supreme Court's decision has no direct effect on California and does not change our analysis." (*Id.* at p. 161, fn. 17.) Young does not identify anything about the holding in *Ramos* that distinguishes it from the unanimity principle long recognized in California or is in any way inconsistent with the continuous-course-of-conduct exception under California law. Thus, although the "factual circumstances" are different, we conclude as we did in *Wilson*, that "[n]othing in Ramos suggests that a unanimity instruction was required in this case." (*Ibid.*)

Young's reliance on *People v. Hernandez* (2013) 217 Cal.App.4th 559, is similarly misplaced. There, the defendant was convicted of unlawful possession of a firearm and ammunition. (*Id.* at p. 563.) The Court of Appeal concluded the trial court erred in failing to give a unanimity instruction because "the record reveal[ed] the possibility of two distinct possessions separated by time and space." (*Ibid.*) The facts there, however, are readily distinguishable as the incidents of possession were at two different locations (outside a house and inside a car at a gas station parking lot), were separated by more than an hour, and there was conflicting evidence whether the defendant had a gun at both locations and whether it was the same gun. (*Id.*

11

at p. 574.) Additionally, as opposed to here, the defendant "tendered a different defense to each alleged possession." (*Ibid.*)

Moreover, even assuming there was error, it was harmless. There was substantial evidence supporting a jury's finding beyond a reasonable doubt on both gunshots. The first gunshot was fired into a residential garage and, as Young's trial counsel argued, "could have . . . hurt somebody." The second gunshot was fired directly into the air in a residential neighborhood and "could have hurt someone, too." Both incidents were captured on video, and Young's trial counsel argued that Young was guilty of both. Therefore, a unanimity instruction was not required.

E. *Young Has Not Shown Ineffective Assistance of Counsel*

A criminal defendant is constitutionally entitled to effective assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Strickland v. Washington* (1984) 466 U.S. 668, 684–685 (*Strickland*).) To establish ineffective assistance, "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).) An ineffective assistance of counsel claim fails if the defendant makes an insufficient showing on either one of these components. (*Strickland*, at p. 687.) "It is defendant's burden to demonstrate the inadequacy of trial counsel." (*People v. Lucas* (1995) 12 Cal.4th 415, 436 (*Lucas*).)

In reviewing such claims, we give significant deference to trial counsel's reasonable tactical decisions, and the " 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " (*Lucas, supra*, 12 Cal.4th at p. 437, quoting *Strickland, supra*, 466 U.S. at p. 689.) " 'Surmounting *Strickland's* high bar is never an easy task.' " (*Harrington v. Richter* (2011) 562 U.S. 86, 105.) And it is "particularly difficult" for a defendant to prevail on direct appeal on a claim of ineffective assistance by trial counsel. (*Mai, supra*, 57 Cal.4th at p. 1009.) It is not ineffective assistance of counsel for counsel to admit obvious weaknesses in the defense case. (*In re Alcox* (2006) 137 Cal.App.4th 657, 668.) "[W]here the evidence of guilt is quite strong, 'it is entirely understandable that trial counsel, given the weight of incriminating evidence, made no sweeping declarations of his client's innocence but instead adopted a more realistic approach, namely, that . . . defendant . . . may have committed [some of the charged crimes] . . . .' " (*People v. Gurule* (2002) 28 Cal.4th 557, 612.) " '[G]ood trial tactics [may] demand[ ] complete candor' with the jury. [Citation.]" (*Ibid*.) It is not ineffective assistance of counsel to concede some measure of culpability and offer the jury some other choice in defendant's favor. (*People v. Gamache* (2010) 48 Cal.4th 347, 392–393.)

Young, who at the beginning of trial faced a potential sentence of 35 years to life for attempted murder of a peace officer, has not shown that the 16-month low-term sentence he received because of his trial counsel's efforts is deficient representation. Video evidence showed that Young took the deputy's gun and fired it at least twice. Considering this incontrovertible evidence, counsel called three expert witnesses to examine the weapons and the crime scene to successfully establish that Young did not fire the gun at

anyone intentionally. In this case, it was entirely reasonable for counsel to admit what was captured on video, but to provide a less culpable explanation.[2]

Therefore, Young has not met his burden to establish that his trial counsel provided ineffective assistance.

## II.

### *Young Forfeited His RJA Claim*

Young also argues that his jury conviction should be reversed because the "criminal process in this case was affected by implicit racial bias" and his rights under the RJA were violated. He contends the responding officer was subconsciously biased based on his "perceived Blackness from the very first moments of his encounter with law enforcement that day, as an immediate criminal 'suspect.' " He asserts another officer's "very first impression of the situation was a person with 'an Afro,' " and a third officer had "recently accepted responsibility for unlawfully beating a different Black man."

The People assert that Young forfeited his RJA claim by failing to raise it in a timely manner in the trial court. We agree.

In *People v. Lashon* (2024) 98 Cal.App.5th 804 (*Lashon*), the appellate court held "the long-standing procedural appellate rules governing forfeiture of issues" apply in the context of section 745, such that a defendant that has a meaningful opportunity but fails to raise an RJA claim in the trial court

---

[2] In his reply brief, Young argues for the first time on appeal that "nothing in the record suggests counsel obtained" his consent to argue he was guilty of discharging a firearm with gross negligence. "[W]e do not consider arguments raised for the first time in a reply brief." (*Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 657; *Mansur v. Ford Motor Co.* (2011) 197 Cal.App.4th 1365, 1387–1388 [appellate court will not consider arguments raised for the first time in reply because it deprives respondent of opportunity to respond].) We decline to consider Young's argument here.

forfeits that claim on appeal. (*Id.* at pp. 809, 815–816; see also *People v. Corbi* (2024) 106 Cal.App.5th 25, 38–42 (*Corbi*) [agreeing with the analysis in Lashon]; *People v. Singh* (2024) 103 Cal.App.5th 76, 113–116 [same].)

The court in *Lashon* explained: As originally enacted, on January 1, 2021, section 745, subdivision (b) allowed defendants to "seek relief by filing a motion in the trial court or, if judgment had been imposed, by filing a 'petition for habeas corpus, or a motion under section 1473.7, in a court of competent jurisdiction, alleging a violation of subdivision (a).' (§ 745, subd. (b).)" (*Lashon, supra,* 98 Cal.App.5th at p. 810.) At that time, section 745 applied "only *prospectively* to cases in which judgment had not been entered prior to January 1, 2021 (Stats. 2020, ch. 317)." (*Lashon*, at p. 810.)

"In 2022, the Legislature amended the statute to provide that a section 745 motion shall be made in the trial court 'as soon as practicable upon the defendant learning of [an] alleged violation,' and '[a] motion that is not timely may be deemed waived, in the discretion of the court.' (§ 745, subd. (c); added by Stats. 2022, ch. 739, § 2.)" (*Lashon, supra,* 98 Cal.App.5th at pp. 812–813.)

The Legislature amended the statute again, "effective January 1, 2023, to provide for *retroactive* application to judgments that were not final." (*Lashon, supra,* 98 Cal.App.5th at p. 810; Stats. 2022, ch. 739, § 2.) The amended statute created a timeline for defendants to bring claims related to judgments entered before January 1, 2021. (*Lashon*, at p. 810; Stats. 2022, ch. 739, § 2.) Notably, though, it did not remove the waiver provision in section 745, subdivision (c). (*Lashon*, at p. 813.)

"After retroactive application became possible," the Legislature modified section 745 once more, through Assembly Bill No. 1118 (Stats. 2023, ch. 464) (Assembly Bill 1118), effective January 1, 2024. (*Lashon, supra,* 98

15

Cal.App.5th at p. 810.) Section 745, subdivision (b) "now provides that postjudgment [RJA] claims based on the trial record may be raised on direct appeal from the conviction or sentence (including to cases with judgments entered before January 1, 2021)." (*Lashon*, at p. 810.) Current section 745, subdivision (b) states, "[f]or claims based on the trial record, a defendant may raise a claim alleging a violation of subdivision (a) on direct appeal from the conviction or sentence," and allows a defendant to "move to stay the appeal and request remand to the superior court to file a motion pursuant to this section." As the court in *Lashon* noted, it "does not state that a defendant may raise a section 745 claim on direct appeal for the first time and does not refer to the general appellate rules governing the preservation or forfeiture of claims presented on direct appeal." (*Lashon*, at p. 810; § 745, subd. (b).) Considering this history, and the fact that "the Legislature did not include any language indicating a section 745 claim could be presented on direct appeal for the first time," the *Lashon* court determined RJA claims remain "subject to the general appellate rules of preservation and forfeiture of claims that could have been but were not made in the trial court." (*Lashon, supra*, 98 Cal.App.5th at pp. 812–815; accord *Corbi, supra*, 106 Cal.App.5th at p. 41; *Singh, supra*, 103 Cal.App.5th at p. 115.)

Here, Young had an adequate opportunity to present his claim in the trial court. He failed to do so and has therefore forfeited the claim on appeal. We decline Young's request to exercise our discretion to disregard his forfeiture. (See, e.g., *People v. Coleman* (2024) 98 Cal.App.5th 709, 720.)

Recognizing this potential result, Young asserts his trial counsel provided ineffective assistance by failing to raise an RJA claim in the trial court. Young fails "to persuade us that had [his] counsel made a timely motion asserting that the [court] violated the RJA . . . , the motion would

16

have been granted. Thus, [he has] not established either the deficient performance or the resulting prejudice required to prevail on a claim of ineffective assistance of counsel." (*People v. Quintero* (2024) 107 Cal.App.5th 1060, 1078.) We have reviewed the briefs and record and cannot say there is no possible satisfactory explanation for his trial counsel's failure to bring a motion under the RJA. The record shows that the encounter escalated due to Young's aggressive conduct and not the result of improper bias or animus on the part of the deputies. Counsel could have thus concluded there was no reason or benefit to raising an RJA motion. (*Singh, supra,* 103 Cal.App.5th at p. 117 [perceived futility one of "multiple reasonable tactical reasons why defense counsel may not have objected to defendant's statement to police"].)

Trial counsel may also have made a strategic decision not to assert an RJA claim but to instead use the claim of racial bias at trial to impeach the officers and argue for a conviction of only the least serious charged offense– discharging a firearm with gross negligence. If so, the strategy was successful. Moreover, even had trial counsel raised a successful RJA claim, the remedies set forth in the RJA for such a prejudgment claim do not include dismissal of the charges and likely would not have resulted in a more favorable outcome. (§ 745, subd. (e); *R.D. v. Superior Court* (2025) 108 Cal.App.5th 1227, 1239–1244.)

## DISPOSITION

The judgment is affirmed.


IRION, Acting P. J.

WE CONCUR:


DATO, J.


BUCHANAN, J.